## Metropolitan Life Insurance Company v. Brady.

[No. 13,693. Filed April 4, 1930. Opinion modified and petition for rehearing denied December 30, 1930. Transfer denied May 22, 1931. Petition to reconsider denied January 30, 1933.]

565

*Miller & Miller* and *Lou A. Robertson,* for appellant.
*Oscar C. Hagemier,* for appellee.

NEAL, P. J.—Appellee, father and administrator of the estate of Mary Francis Brady, alleged in the first paragraph of his amended intervening petition that one Mary Francis Brady applied to appellant by written application for a policy of life insurance on her life in favor of her father; that appellant received the application and issued a policy of life insurance in the sum of $1,000, on terms and conditions unknown to petitioner; that the appellant's agents negligently failed to deliver the policy until Mary Francis Brady was ill and the policy was never delivered; that, at the time appellant's agent called to deliver the policy, the insured was sick and delivery was thereupon refused. The second paragraph alleges, in substance, the same facts as the first, with the addition that appellant failed promptly to act upon the application of Mary Francis Brady, and failed to issue and deliver a policy until the applicant was fatally ill, and that appellant refused thereafter to deliver the policy. Damages in the sum of $1,000, the amount of the policy, was demanded. Trial was before a jury, which returned a verdict in favor of appellee in the sum of $1,098.81, and costs.

The facts favorable to appellee are as follows: That the appellant, Metropolitan Life Insurance Company, is a New York insurance corporation authorized to do business in the state of Indiana, and maintained a branch office in the city of Indianapolis; that one H. Rosen, with the title of general assistant manager, was in charge of the office; that W. O. Weber was an employee of appellant with authority to collect premiums upon insurance and to solicit people to take out new insurance with appellant company; that Mary Francis Brady was solicited by W. O. Weber to take out insurance on her life with appellant company; that pursuant to the solicitation of Weber, Mary Francis Brady executed a written application, which was to the effect that she was applying for $1,000 of life insurance, ordinary, with premium payable annually under a plan of insurance as designated in Rate Book, as "20-year endowment"; that the beneficiary to be named in the policy was her father, Ralph F. Brady; that no agent, medical examiner or any other person, except the officers at the home office of the company, had power on behalf of the company to make, modify or discharge any contract of insurance, to bind the company by making any promises respecting any benefits under any policy issued thereunder; that no statement made to or by, and no knowledge on the part of, any agent, medical examiner or any other person as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the company, unless stated in either (a) or (b) of the application; that the company shall incur no liability under the application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date

of issue, as recited on the first page thereof; that in case of apparent errors or omissions discovered by the company in part (a) of the application, or in case the company shall be unwilling to issue a policy upon the plan or in the amount applied for, the company was authorized to amend the application by noting the change in the space entitled "corrections and amendments," and to prepare and submit a policy on a different plan, or a different amount from that hereby applied for, and the acceptance of such policy by the applicant, as so submitted, accompanied by a copy of the application so amended, shall operate as a ratification of such change or amendment; that the application was executed by Mary Francis on April 7, 1925, and the medical examination of applicant was signed by the medical examiner on April 7, 1925; that the application was considered by the officers at the home office in the regular course of business; that an applicant for insurance, who was a girl 19 years of age, and weighing 98 pounds, and whose mother had died of tuberculosis at the age of 25 is not, according to the established general custom in the life insurance business, a first class or ordinary risk; that, after consideration, and by reason of Mary Francis Brady's family history of tuberculosis, as shown by the application, and of the fact that she was underweight, appellant declined to write insurance upon her in its ordinary or first-class risk calling for a premium, and with a reserve calculated upon the American Experience Table; that the company did prepare a policy of insurance upon the life of Mary Francis Brady, as a special-class risk, that is, as a risk more hazardous than the ordinary risk calling for a premium, and with a reserve calculated on a special table; that such policy so prepared called for a premium of $47.02, whereas, for an ordinary endowment policy in the principal sum of $1,000, the premium calculated was $44.07; that said

policy was posted from the home office of defendant at New York City on April 27, 1925, to the Indianapolis district office of defendant by United States mail, and arrived at said Indianapolis district office at Indianapolis, Indiana, on April 29, 1925, on which day, said Mary Francis Brady was not in an impaired condition of health; that said agent, W. O. Weber, did not call at Mary Francis Brady's home to deliver said policy prior to May 7, 1925; that on May 6, 1925, Mary Francis Brady became ill and her condition of health was seriously impaired; that, when W. O. Weber called at the home of Mary Francis Brady with the policy, he was informed of her illness, and he refused to deliver said policy, but returned the same to the Indianapolis district office of appellant; that on May 9, 1925, said Ralph F. Brady called at the Indianapolis district office of defendant on behalf of Mary Francis Brady, demanded the delivery to him of the policy, and offered to the person then in charge of the office the sum of $47.02, in legal tender in payment of the first premium called for by the policy; that the demand was refused and the tender rejected; that the policy was returned to the home office of defendant, and one year thereafter, in pursuance of a rule of the company, was destroyed; that, on the night of April 7, 1925, at the time of the signing of the application, the father asked the agent if his daughter should pay the premium, and the agent replied "that it would be alright when the policy was delivered to give him a check for the premium"; that the daughter was able and ready to pay the premium on the night of April 7, 1925, and so informed the agent; that the agent informed Mary Francis that the policy would be delivered the first of May; that, between April 7, 1925, and May 8, 1925, no word was received from appellant in regard to the policy; that Mary Francis was never an insurable risk after she contracted a severe cold on May 6, 1925;

that a reasonable time for the delivery of a life policy to a resident of Indianapolis after the same has been received by the branch office in Indianapolis is 24 hours; that a reasonable time for a life insurance company, with its home office in New York, and its branch office in Indianapolis, to deliver a policy of life insurance to an applicant in Indianapolis, figuring from the date the application was taken to date of delivery, is 10 days; that it was admitted by the manager of the branch office at Indianapolis that it was "their fault" that the policy had not been delivered sooner.

Many errors have been assigned, all of which are presented. We will discuss the alleged error in overruling the motion for a new trial, confining ourselves to two causes, namely: The verdict of the jury is not sustained by sufficient evidence; the verdict is contrary to law.

Under the facts of this case, is the appellant, an insurance company, liable in damages, in either of the two instances, to-wit: For negligent and unreasonable delay in acting upon an application for life insurance; for negligent and unreasonable delay in the delivery of a life insurance policy to the applicant, assuming in each case the applicant was damaged by such delay.

The appellee says this court has previously approved the doctrine of tort liability, and quotes from the case of *Live Stock Ins. Co.* v. *Stickler* (1917), 64 Ind. App. 191, 201, 115 N. E. 691, 694, as follows: "In some jurisdictions insurance companies have been held liable for damages for negligent or unreasonable delay in acting on applications for insurance, where it was shown that but for such delay the application would have been approved and the insurance issued in time to have protected the applicant against a loss which occurred to his damage during the period of such unreasonable delay. *Duffie* v. *Bankers' Life Assn.* (1913), 160 Iowa 19, 139 N. W.

1087, 1089, 46 L. R. A. (N. S.) 25, and notes; *Boyer* v. *Hail Ins. Co.* (1912), 86 Kans. 442, 121 Pac. 329, 40 L. R. A. (N. S.) 164, and notes, Ann. Cases 1915A, 671; *Dorman* v. *Conn. Fire Ins. Co.* (1914), 41 Okla. 509, 139 Pac. 262, 51 L. R. A. (N. S.) 873. While we do not find a decision in Indiana on the identical question, the decisions of our courts on kindred questions are on principle in harmony with the doctrine above announced. *Indiana Life, etc., Co.* v. *Reed* (1913), 54 Ind. App. 450, 459, 103 N. E. 77, and cases cited."

In addition to the cases above cited, we call attention to the following cases which support the principle of law pronounced by this court through Judge Felt: *DeFord* v. *New York Life Ins. Co.* (1924), 75 Colo. 146, 224 Pac. 1049; *Carter* v. *Manhattan Life Ins. Co.* (1897), 11 Hawaii 69; *Wallace* v. *Hartford Fire Ins. Co.* (1918), 31 Idaho 481, 174 Pac. 1009; *Walker* v. *Farmers' Ins. Co.* (1879), 51 Iowa 679, 2 N. W. 583; *Johnson* v. *Farmers' Ins. Co.* (1918), 184 Iowa 630, 168 N. W. 264; *Security Ins. Co.* v. *Cameron* (1922), 85 Okla. 171, 205 Pac. 151, 27 A. L. R. 444; *Columbian Nat. Life Ins. Co.* v. *Lemmons* (1923), 96 Okla. 228, 222 Pac. 255; *Childers* v. *New York Life Ins. Co.* (1925), 117 Okla. 7, 245 Pac. 59; *Brown* v. *Missouri State Life Ins. Co.* (1926), 124 Okla. 155, 254 Pac. 7; *Dyer* v. *Missouri State Life Ins. Co.* (1925), 132 Wash. 378, 232 Pac. 346. However, upon an examination of every case, it is disclosed that the several courts, in pronouncing approval of the doctrine of tort liability for failure to accept or reject an insurance application within a reasonable time, predicated its reasoning substantially upon the fact that the first premium was paid at the time the application was taken by the soliciting agent, either in cash or note. We quote from several of the cases above cited: "When a company has received the first premium, and it is to apply from the date of application, fair dealing requires

that the company act upon the application within a reasonable time. Otherwise, it would be permitted to hold the applicant's money, with no return, for such time as it saw fit; a condition which cannot be supposed to have been intended by the parties." *DeFord* v. *New York Life, supra.* "An insurance company having solicited and obtained applications for insurance, and having received payment of the premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish, or decline to do so within such reasonable time as will enable them to act intelligently, and advisedly thereon or suffer the consequences flowing from their neglect to do so." *Security Ins. Co.* v. *Cameron, supra.* "But it is said that a certificate or policy of insurance is simply a contract like any other, as between individuals, and that there is no such thing as negligence of a party in the matter of delay in entering into a contract. This view overlooks the fact that the defendant holds and is acting under a franchise from the state. The legislative policy, in granting this, proceeds on the theory that chartering such association is in the interest of the public, to the end that indemnity on specific contingencies shall be provided those who are eligible and desire it, and for their protection the state regulates, inspects, and supervises their business. Having solicited applications for insurance, and having so obtained them and *received payment of fees or premiums* exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do." *Duffie* v. *Bankers' Life Ins., supra.* "The question is, was there a duty to forward the application, not was there a consideration for what might be done in case it should be forwarded? The action is not upon a

contract for term insurance but in tort for negligence whereby term insurance was prevented and but for which there would have been term insurance. If it is necessary to prove a contract and a consideration in order to prove a duty to forward, it may be held that there was an implied contract, if indeed not an express oral contract, to forward, and that the consideration therefor was the making of an application at the solicitation of the agent, the submission, at the request of the agent, to an examination by the examining physician, and the making a deposit with the agent." *Carter* v. *Manhattan Life Ins. Co., supra.* The last case cited was the first to enunciate the doctrine of tort liability against a life insurance company for unreasonable delay in the consideration of an application for life insurance.

The doctrine of tort liability just referred to has been refused by the Supreme Court of Arkansas. In *Nat. Union Ins. Co.* v. *School District* (1916), 122 Ark. 179, 182 S. W. 547, L. R. A. 1916D 238, an insurance company was held not liable for the negligence of its agent in failing to forward the application, accompanied by payment of the premium, the property having been subsequently destroyed without insurance, where he had only authority to solicit applications, deliver policies and receipt for initial premiums, and the application stipulated that there should be no contract until the issuance and delivery of a policy. The court said: "Under the express terms of this proposal on the part of appellee for insurance, it is stipulated that there shall be no contract of insurance until the company shall approve the application and evidence its approval by the issuance of a policy. Under this stipulation of appellee, even if the soliciting agent had promptly forwarded the application to the company, the latter was under no legal obligation to issue the policy to appellee. The authority of the soliciting agent to receive and forward the application

if strictly followed did not impose upon the appellant any legal duty. . . . Negligence and liability therefor cannot be predicated upon a state of facts that does not impose any legal duty." Also, the Supreme Court of Mississippi, in a well considered opinion, in part, said: "We are unable to perceive how an action may be maintained in tort which so clearly cannot be maintained on any theory on the contract. The Prudential Life Insurance Company was under no duty to write insurance on the life of appellant's intestate, because there is no statute in this state fixing such duty upon insurance companies. We can find no such rule at the common law. It is quite elementary that there cannot be a tort without a breach of a legal duty. It is true that the business of insurance is affected with a public interest. . . . But, unless and until the legislature shall declare a legal duty on the insurance companies to an applicant for insurance, despite the terms of the application, this court is without the power or the desire to trench upon legislative authority." *Savage* v. *Prudential Life Ins. Co.* (1929), 154 Miss. 89, 121 So. 487.

We are of the opinion that this court did not, without qualification, in the case of *Live Stock Ins. Co.* v. *Stickler, supra,* approve the doctrine of tort liability as applied to insurance companies where there has been an unreasonable delay in the acceptance or rejection of an application for insurance or in the failure to deliver an insurance policy for acceptance or rejection by the applicant within a reasonable time. This court, as presently constituted, cannot perceive how a tort liability can be predicated upon an insurance company until and unless some legal duty devolves upon the insurance company to either accept or reject an application for insurance within a reasonable time. This legal duty must arise by virtue of some express provision of the statute or from the contractual

relation existing between the parties whereby a legal duty, not a moral duty, devolves upon the insurance company to act within a reasonable time upon an application submitted.

In this case, the application provided: "That the company shall incur no liability under this application until it has been received, approved and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue." Are we to give effect to the above terms of the contract subscribed to by the applicant, or are we to flagrantly disregard them? It must be admitted that the contractual stipulations as above noted were of the kind and character that the parties had a perfect right to enter into. If such is the case, then no legal liability can be imposed upon appellant, either in unreasonable delay in passing on the insurance application or unreasonable delay in delivering the policy. See dissenting opinion *Fox* v. *Volunteer State Life Ins. Co.* (1923), 185 N. C. 121, 116 S. E. 266, Ld., 186 N. C. 763, 119 S. E. 172.

Again, it was provided by the terms of the application in the instant case that no agent, medical examiner or any other person, except the officers at the home office of the company has power on behalf of the company to make, modify or discharge any contract of insurance. If it be claimed that the agent said it was not necessary to pay the premium in advance, such statement was consistent with the stipulations of the application. The first premium was to be paid simultaneously with the delivery of the policy. The appellant expressly reserved the right to accept or reject the applicant as an insurable risk or tender to appellee for acceptance or rejection a

different kind of a policy which called for an increased premium.

It is also a fact that the agent said that delivery of the policy as applied for would be made by May. If we concede, but not decide, that the agent could bind the company by such a statement, in view of the express stipulations of the application, the mere promise of a delivery by May is not controlling in this tort action. The evidence discloses that the policy as applied for was rejected by the appellant.

The undisputed facts in this case discloses an offer by Mary Francis Brady, applicant, to appellant to subscribe for life insurance policy and a rejection of the application by the insurance company; the preparation of a policy of insurance which called for an increased premium, and direction that the same be submitted to her for acceptance or rejection. The minds of the contracting parties had never met. Mary Francis had the legal right to reject the policy so issued when presented to her. *MacKelvie* v. *Mutual Ben. Life Ins. Co.* (1923), 287 Fed. 660; *Piedmont, etc., Life Ins. Co.* v. *Ewing* (1875), 92 U. S. 377, 23 L. Ed. 610; *Michigan Pipe Co.* v. *Michigan, etc., Ins. Co.* (1892), 92 Mich. 482, 52 N. W. 1070, 20 L. R. A. 277; *Riordan* v. *Equitable Life Assur. Society* (1918), 31 Idaho 657, 175 Pac. 586; *Salisbury* v. *Indiana, etc., Live Stock Ins. Co.* (1918), 202 S. W. (Mo. App.) 412; *New, Admr.,* v. *Germania Fire Ins. Co.* (1908), 171 Ind. 33, 85 N. E. 703, 131 Am. St. 245.

It is a well-settled rule, especially in the absence of a provision in the application expressly providing that the contract of insurance should be complete the moment that the application was received at the office of the insurance company and accepted by it, that mere delay in passing upon an application for

insurance cannot be construed as an acceptance thereof by the insurer which will support an action *ex contractu*. *Kohen* v. *Mutual Reserve Fund Life Assn.* (1886), 28 Fed. 705; *Alabama Gold Life Ins. Co.* v. *Mayes* (1878), 61 Ala. 163; *Winchell* v. *Iowa State Ins. Co.* (1897), 103 Iowa 189, 72 N. W. 503; *Northwestern Mutual Life Ins. Co.* v. *Neafus* (1911), 145 Ky. 563, 140 S. W. 1026, 36 L. R. A. (N. S.) 1211; *Heiman* v. *Phoenix Mutual Life Ins. Co.* (1871), 17 Minn. 153, 10 Am. R. 154; *Ross* v. *New York Life Ins. Co.* (1899), 124 N. C. 395, 32 S. E. 733; *Van Arsdale* v. *Young* (1908), 21 Okla. 151, 95 Pac. 778.

In view of the stipulation in the application, all of which were agreed to by Mary Francis, in the absence of any statute of the state of Indiana imposing a duty upon an insurance company to accept or reject an application within a specified time, we hold that no legal duty devolved upon appellant either to accept or reject the application in the instant case or submit a counter proposal within a reasonable time. *Meyer* v. *Central States Life Ins. Co.* (1919), 103 Neb. 640, 173 N. W. 578; *Bradley* v. *Federal Life Ins. Co.* (1920), 295 Ill. 381, 129 N. E. 171, 15 A. L. R. 1021; *Giddings* v. *Insurance Co.* (1880), 102 U. S. 108, 26 L. Ed. 92.

The verdict of the jury is not sustained by sufficient evidence, and, therefore, is contrary to law.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.