HARRY KAISER, ADMINISTRATOR OF THE ESTATE OF THOMAS C. KAISER, DECEASED, AND HARRY KAISER AND VIOLA KAISER *v.* NATIONAL FARMERS UNION LIFE INSURANCE COMPANY.

[No. 1-175A19. Filed January 16, 1976. Rehearing denied February 26, 1976. Transfer denied August 23, 1976.]

*Eugene A. Stewart, O'Connor & Stewart,* of Brookville, for appellants.

*Walter B. Keaton, Keaton & Keaton,* of Rushville, *Bohland & Barrett,* of Brookville, for appellee.

LYBROOK, J.—Plaintiffs-appellants Kaiser *et al.* appeal from a judgment in favor of defendant-appellee National Farmers Union Life Insurance Company on plaintiffs' complaint to recover the $10,000 proceeds of an alleged insurance policy on the life of Thomas C. Kaiser, deceased. The sole issue presented for review is whether payment by Thomas C. Kaiser of the first premium at the time of application for the policy of life insurance with defendant created a contract of temporary or interim insurance until either formal acceptance or rejection of the application.

The record reveals that the facts pertinent to the above issue are, for the most part, undisputed. On May 17, 1969, Thomas C. Kaiser, decedent, applied for a term life insurance policy with defendant in the face amount of $10,000. On that day, Kaiser paid the first quarterly premium due on the policy to defendant's agent Leo Hartman who issued Kaiser a conditional receipt.

Thereafter, on June 30, 1969, Hartman informed Kaiser that since he was only 20 years old, he could not purchase a term policy, and solicited and received Kaiser's application for a whole life insurance policy in the face amount of $10,000. Kaiser was required to tender an additional premium payment with the application, which, together with the premium paid with the application for the term policy equalled the amount due for the first premium on the whole life policy applied for. Kaiser was also advised that he would be required to undergo a medical examination, which he did on July 11, 1969. The report from the medical examination reached defendant's home office on July 14, 1969. On July 20, 1969, Kaiser was killed in an automobile accident, prior to formal acceptance or rejection of his application by defendant.

At the time decedent completed the application for the whole life policy and tendered the appropriate premium, defendant's agent issued him a conditional receipt which provided that insurance coverage under the policy would be effective as of a specified date provided that defendant was satisfied that on such date the applicant was an insurable risk under the company's rules for the type of policy applied for. As such, the conditional receipt is one which is commonly referred to as an "insurability receipt" as discussed in *Prudential Insurance Company of America* v. *Lamme* (1967), 83 Nev. 146, 425 P.2d 346.

At trial, the court strictly interpreted the language of the receipt and held that since defendant had not, at the time of decedent's death approved his application, but was attempt-

ing to obtain additional information to determine his insurability, no contract for insurance existed. Judgment was therefore entered for defendant. For reasons hereinafter stated, we reverse.

The practice of insurance companies requiring applicants to submit premium payments with their applications and issuing conditional or binding receipts therefor has spawned extensive litigation when claims are presented by the applicant or his representative for occurrences during the period between the tendering of the application and the acceptance or rejection of the same by the company. See generally, 2 A.L.R.2d 943. Many of the disputes over the liability of the insurance company hinged upon strict interpretation under applicable contract principles of the provisions of the conditional or binding receipt issued by the company in exchange for the applicant's first premium payment. In other decisions, however, courts have recognized that:

> ". . . an insurance policy is not an ordinary contract. It is a complex instrument unilaterally prepared, and seldom understood by the assured. The same is equally true of the conditional receipt. The parties are not similarly situated. The company and its representatives are expert in the field; the applicant is not. A court should not be unaware of this reality and subordinate its significance to strict legal doctrine. *Allen* v. *Metropolitan Life Ins. Co.*, 44 N.J. 294, 208 A.2d 638 (1965). Nor should a court be obliged to overlook the obvious advantage to the company in obtaining payment of the premium when the application is made. It is a device to avoid the possibility that the applicant will change his mind and revoke his application, or deal with a rival company. *Metropolitan Life Ins. Co.* v. *Grant*, 268 F.2d 307 (9th Cir. 1959), Pope, J. concurring. A conditional receipt tends to encourage deception. We do not mean to imply affirmative misconduct by the soliciting insurance agent. We suggest only that if nothing is said about the complicated and legalistic phrasing of the receipt, and the agent accepts an application for insurance together with the first payment, the applicant has reason to believe that he is insured. Otherwise, he is deceived." *Prudential Insurance Company of America* v. *Lamme, supra.*

Thus, courts have interpreted conditional receipts as creating a temporary or interim contract for insurance subject to a condition subsequent—rejection of the application by the company. Where rejection does not occur, in the case of life insurance, prior to the death of the applicant, the company is liable for the stated amount of proceeds.

In a scholarly opinion, the Supreme Court of Kansas in *Service* v. *Pyramid Life Ins. Co.* (1968), 201 Kan. 196, 440 P.2d 944, discussed at length the legal effects of the practice of insurance companies in issuing receipts in exchange for an application for life insurance together with the first premium. That case involved the issuance of a conditional receipt which, being similar to that in the case at bar, provided that the policy was effective upon the date of application or the date of medical examination whichever was later, provided that the company at its home office was satisfied that on such date the proposed insured was insurable under the existing rules and standards of the company.

> "Many cases in the courts indicate a trend to construe the conditions liberally, and to treat receipts similar in wording to the one before us as binding during the interim regardless of the ultimate action of the insurance carrier on the application. These decisions are based upon the assurance that if the receipt meant anything, no other result could have been intended by the parties, for unless the insured was to be protected against death during the interim period there would be no advantage to him in paying his premium in advance. If the company did not intend that there should be insurance effective pending the date of the application, or medical, as in this case, and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the approval. In other words, the insured would be paying for something which he did not receive. (Stonsz v. Equitable Life Assur. Soc., supra, and cases cited therein.)

> "A binding receipt issued by a life insurer connotes obligation, and when supported by valid consideration, suggests

a contract. (Liberty National Life Insurance Co. v. Hamilton, supra.)

"If it cannot be said upon interpretation of this binding receipt that Mr. Service was insured from the date of the binder, or medical, until a formal policy was issued or the risk declined by the insurance company, then it must be said this binding receipt is ambiguous, and, if so, it should be construed against the insurance company, it having been drawn up and issued by the agents of the insurance company upon its printed form.

"If there was to be no contract of insurance in any event until the application was approved, and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application (or medical) or not. If he lived until the application was approved and a policy issued, it would seem to be a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiary would derive no benefit from the insurance. The chief object of the provision would, therefore, seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk. (Starr v. Mutual Life Ins. Co., 41 Wash. 228, 83 P. 116.)

"Under authorities which hold temporary insurance to be in effect, the conditions imposed by the receipt herein would be treated as conditions subsequent. The company was bound to act either affirmatively or negatively on the application. The insured, if an acceptable risk, was entitled to a policy. If he was not acceptable, the insurance company was required to so notify him, and return the premium paid, or if rated up, notify him by tendering an application at the higher rate. On the facts in the instant case the insured was never notified during his life that his application was accepted, rejected, or that it would be considered at a higher premium. Here the money for the first premium was retained by the insurance company until after the insured's death, when tender was made to his beneficiary for a return of the premium, which she rejected (Stonsz v. Equitable Life Assur. Soc., supra; Albers v. Security Mut. Life Ins. Co., 41 S.D. 270, 170 N.W. 159; and Reynolds v. Northwestern Mut. Life Ins. Co., 189 Iowa 76, 176 N.W. 207.)

"Where the provisions in a binding receipt are construed as providing temporary insurance protection until such time as the insurer has considered the application and announced its determination to accept or reject the risk, the insurer cannot terminate the risk so assumed unless the insured is notified in his lifetime that his application was rejected. (Colorado Life Co. v. Teaque [Tex. Civ. App. 1938] 117 S.W.2d 849; Commercial Union Assurance Co. v. State ex rel. Smith et al., [1888] 113 Ind. 331, 15 N.E. 518; and Halle v. New York Life Ins. Co., supra.)"

As the parties herein recognize, no Indiana case law exists upon the issue squarely presented. However, in *The Western & Southern Life Insurance Co.* v. *Vale* (1938), 213 Ind. 601, 12 N.E.2d 350, our Supreme Court refused to construe the language of a form receipt given to an applicant for industrial insurance who tendered a premium payment with the application in such a manner so as to permit the insurer to say that it had not bound itself. In that case, the insurance company had solicited an application for industrial insurance from Vale who tendered an initial premium payment with the application. He was issued a conditional receipt therefor. Two days after Vale completed a physical examination as required by the company, and before a policy had been issued to him, he sustained a loss, which the court found to be covered. In its opinion, the court recognized the two approaches to conditional receipts and stated that:

"In most jurisdictions it is held that a receipt, stating that the insurance shall be in force from its date, provided the application is approved and accepted at the home office of the insurer, is ineffectual in providing protection to the applicant until the application is approved, and that it is wholly in the power of the company to reject the application, after death or injury insured against, arbitrarily and without giving any reason for the rejection. An examination discloses that these cases are founded upon the authority of *Insurance Company* v. *Young's Administrator* (1874), 23 Wall (U.S.) 85, 106, 23 L.Ed. 152, 154. They are based upon the theory that the application is an initial step; that the absolute right to accept or reject is with the company; that, until there is an acceptance, there is no contract."

However, the court further stated:

"But there are cases to the contrary, which hold that the insurance is effective as of the date of the receipt, subject to the right of the company to reject as of the date of the application, if, upon reasonable grounds, the applicant was not insurable upon that date. *Reynolds, Adm'x.* v. *Northwestern Mutual Life Ins. Co.* (1920), 189 Iowa 76, 176 N.W. 207; *Gonsoulin* v. *Equitable Life Assurance Society* (1922), 152 La. 865, 94 So. 424. In *Gardner* v. *North State Mutual Life Ins. Co.* (1913), 163 N.C. 367, 79 S.E. 806, doubt is indicated as to whether the company 'can arbitrarily or even unreasonably' reject the application or withhold its approval. In *Starr* v. *Mutual Life Ins. Co.* (1905), 41 Wash. 228, 232, 83 Pac. 116, 117, it is pointed out that, if the company has the right to arbitrarily reject the application in the event of death of the applicant before the policy is issued, no benefit is derived from that portion of the premium which covers the time between the application and the acceptance and issuance of the policy. This is undoubtedly true, since, if the company is not bound to pay a loss occurring in the period, there is no insurance for the period. It is said: 'The chief object of the provision would therefore seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk.' In *Francis* v. *Mutual Life Insurance Co.* (1910), 55 Ore. 280, 106 Pac. 323, in which it was held that the company was not liable where the death occurred before the acceptance of the application and the issuance of the policy, the court characterized such a receipt as a mere trick upon the part of the insurance company to deceive an applicant in the belief that he has temporary insurance and thereby induce him to part with his money in advance. In other words, it is recognized that such a receipt is calculated to convey the impression to the applicant for insurance that he is insured, and to procure money from him as premium for insurance over a period when he is not insured at all. Put otherwise, it means that, by a device calculated to deceive, the applicant is defrauded out of so much of the premium paid as would provide insurance for the period between the application and the acceptance and delivery of the policy. The cases will be found collected in Am. Ann. Cas. 1915B, 657, and 81 A.L.R. 333."

After discussing each of these approaches to a conditional receipt situation, the court rejected the then majority ap-

proach and adopted the approach that the conditional language in a form receipt was to be in essence treated as conditions subsequent:

"It would be unconscionable to permit an insurance company, issuing such a receipt and receiving a premium from an applicant, part of which was to pay for protection under its policy from the date of the application. to the date of acceptance, to say that it had not bound itself to give anything whatever for that portion of the premium; that it deliberately intended to accept the premium for that period, but that it never intended to, and that it had. not insured the applicant for that period. In construing the language of a contract, the primary purpose is to discover the mutual intention of the parties, and the intent of one party only does not suffice. Where there is doubt, the contract will be interpreted in the sense that the promisor knew, or had reason to know, the promisee understood it. A construction that works a forfeiture will be avoided, as well as a construction that is inequitable and gives an unfair or unreasonable advantage to one of the parties. The court will consider the situation and condition of the parties and the purpose of the contract. Where printed forms are used, the words will be construed most strongly against the one preparing them; and it will not be supposed that, in preparing the form, the words were used for the purpose of inducing the other to act or part with a consideration on the supposition that his words mean one thing while he secretly harbors the intention to contend that they mean something quite different. . . ."

For reasons similar to those expressed in *Prudential Insurance Company of America* v. *Lamme, supra;* and *Service* v. *Pyramid Life, supra,* we conclude that the conditional receipt issued to Thomas Kaiser in the case at bar created a contract for temporary or interim life insurance subject to rejection by defendant National Farmers Union Life Insurance Company. Further, since defendant did not reject the application prior to the death of Kaiser, it is liable for the amount of proceeds stated in the application. Where, as in the case at bar, a receipt is issued by a life insurer and the receipt is supported by consideration, a contract is created. Any conditions contained in the receipt are

to be treated as conditions subsequent thereby compelling an insurer to act affirmatively or negatively on the application. Moreover, where an applicant is not acceptable, he must be notified and the premium returned. An insurer cannot terminate the risk so assumed unless the applicant is so notified in his lifetime.

The judgment below is therefore reversed, and the cause remanded with instructions to enter judgment in favor of plaintiffs.

Reversed and remanded with instructions.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 339 N.E.2d 599.