# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1336

JUNE KIMMEL, individually and as
Personal Representative of the
Estate of Richard Kimmel,

*Plaintiff-Appellant*,

*v.*

WESTERN RESERVE LIFE ASSURANCE
COMPANY of OHIO,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-cv-00055-PRC—**Paul R. Cherry**, *Magistrate Judge.*

————————

ARGUED SEPTEMBER 22, 2010—DECIDED NOVEMBER 23, 2010

————————

Before MANION, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* On November 13, 2006, Richard Kimmel applied for a $500,000 life insurance policy from Western Reserve Life Assurance Company and paid an initial premium. In return for his application and payment, he received a conditional receipt. Both Richard's applica-

tion and the conditional receipt contained a clause that expressly terminated after 60 days any life insurance coverage provided by the company pending its review of Richard's application. Sixty days then passed without Western Reserve either accepting or rejecting Richard's application. On February 26, 2007, Richard was killed in an automobile accident. Richard's widow June Kimmel sought benefits under the terms of the conditional receipt. When Western Reserve denied her claim, June brought this suit. The district court granted Western Reserve's motion for summary judgment, finding that the conditional receipt expired on its own terms and that Western Reserve had not acted in bad faith under Indiana law. The court denied as moot June's motion for summary judgment on Western Reserve's defense of material misrepresentation. June has appealed from the judgment. We review de novo decisions made at the summary judgment stage. See *Franklin v. City of Evanston,* 384 F.3d 838, 843 (7th Cir. 2004). In doing so, "we draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Id.*, quoting *Williamson v. Indiana University*, 345 F.3d 459, 462 (7th Cir. 2003). We affirm.

I. *Conditional Receipt*

Because we find that the express language of the conditional receipt controls June's claim for benefits, we begin there. The relevant facts are undisputed.

The application Richard submitted to Western Reserve was five pages long and contained the following language:

> The Company shall have sixty days from the date hereof within which to consider and act on this application and if within such period a policy has not been received by the applicant or notice of approval or rejection has not been given, then this application shall be deemed to have been declined by the Company.

The language was on the last page of the application, which was also the signature page. When he submitted his application, Richard also paid a $385 premium. In return, he received a one-page conditional receipt that disclosed the following terms:

> . . . The policy you applied for will not become effective unless and until a policy contract is delivered to you and all other conditions of coverage are met. . . .
>
> * * *
>
> Any conditional coverage provided by this Receipt will terminate on the earliest of: (a) 60 days from the date the application was signed; (b) the date the Company either mails notice to the applicant of the rejection of the application and/or mails a refund of any amounts paid with the application; (c) when the insurance applied for goes into effect under the terms of the policy applied for; or (d) the date the Company offers to provide insurance on terms that differ from the insurance for which you have applied.
>
> * * *
>
> If one or more of this Receipt's conditions have not been met exactly . . . the Company will not be liable

except to return any payment made with the application.

If the Company does not approve and accept the application for insurance within 60 days of the date you signed the application, the application will be deemed to be rejected by the Company and there will be no conditional insurance coverage. In that case, the Company's liability will be limited to returning any payment(s) you have made upon return of this Receipt to the Company.

. . . This Receipt does not provide any conditional insurance until all the conditions and requirements are met as outlined above.

The 60-day limit of coverage expressed in the application and in the conditional receipt expired on January 12, 2007. By that time, Western Reserve had not accepted or denied Richard's application (or taken much action on his application at all, as described below). Richard died on February 26, 2007. On July 23, 2007, Western Reserve returned the premium Richard had paid with his application, with interest.[1]

---

[1] Although its denial letter reserved "any rights and defenses," Western Reserve's letter relied on its belief that Richard's application contained material misrepresentations to deny benefits, and did not rely on the express limiting language contained in the application and conditional receipt. We do not believe that any inferences can or should be drawn from this fact, but it does seem odd that Western Reserve's first response

(continued...)

An insurance policy is interpreted as any other contract. See *Hoosier Insurance Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 307 (Ind. App. 2001); *Smith v. Allstate Insurance Co.*, 681 N.E.2d 220, 223 (Ind. App. 1997). Where there is no ambiguity in a contractual provision, that provision's plain language controls. *Burress v. Indiana Farmers Mutual Insurance Group*, 626 N.E.2d 501, 505 (Ind. App. 1993), citing *Brunner v. Economy Preferred Insurance Co.*, 597 N.E.2d 1317, 1319 (Ind. App. 1992). Ultimately, the court's role is to "give effect to the intent and reasonable expectations of the parties as expressed in the contract," and does not extend to changing the contract's terms. *Colonial Penn Insurance Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997). June argues that this longstanding tenet of Indiana law, that the plain language controls, is tempered by other Indiana cases holding that, until a life insurance company notifies an applicant during his lifetime that his application has been denied and returns his premium, the insurer cannot terminate insurance coverage regardless of the plain language. We disagree with this view of Indiana law.

In making her argument, June relies primarily on two Indiana cases. The first, *Kaiser v. National Farmers Union Life Insurance Co.*, 339 N.E.2d 599 (Ind. App. 1976), indeed held that an insurance company could not terminate life insur-

---

[1] (...continued)

was a full-blown investigation of Richard's application rather than the more cost-effective path of relying first on the 60-day limit.

ance coverage under a conditional receipt unless, within the applicant's lifetime, it had both notified the applicant of its denial and returned the applicant's premium. Kaiser, who was 20 years old at the time, applied for a term life insurance policy and paid the first quarterly premium due on the policy. Due to his age, the insurance company's agent told Kaiser that he could not purchase a term policy but instead could apply for a whole life policy. He did so, tendering an additional premium and receiving a conditional receipt, but he was killed in an accident before the company formally accepted or denied his application. The court in *Kaiser* found that the conditional receipt created a contract for temporary interim life insurance subject to the company's rejection of Kaiser's application. Because the company did not reject Kaiser's application prior to his death, it was liable for the benefit stated in the application. As the court explained:

> any conditions contained in the receipt are to be treated as conditions subsequent thereby compelling an insurer to act affirmatively or negatively on the application. Moreover, where an applicant is not acceptable, he must be notified and the premium returned. An insurer cannot terminate the risk so assumed unless the applicant is so notified in his lifetime.

*Kaiser*, 339 N.E.2d at 627-28. The second case on which June relies, *Monumental Life Insurance Co. v. Hakey*, 354 N.E.2d 333, 334 (Ind. App. 1976), looked to *Kaiser* and echoed its holding in finding that a contract existed and the insurer was liable for the benefits stated in Hakey's application

where the company had not notified Hakey of the need for a medical examination within his lifetime, it had accepted his premium, and it had issued a receipt.

*Kaiser* and *Hakey* do not control here. The applicants for life insurance in those cases did not receive a conditional receipt that expressly terminated interim coverage at the expiration of a specified time period, as did the conditional receipt that Richard received from Western Reserve. We relied on precisely that distinction in *Hornaday v. Sun Life Insurance Co. of America*, 597 F.2d 90 (7th Cir. 1979), which also applied Indiana law. Hornaday applied for life insurance from Sun Life, paid a premium, and received a conditional receipt in exchange. One condition of the conditional receipt was that the insurance provided by the receipt terminated after 60 days. Sun Life accepted Hornaday's application and issued the policy, but the company was unable to deliver the policy to (and to collect the full premium from) Hornaday in spite of several attempts to do so. Hornaday then died after the 60-day time limit for the conditional receipt had expired. Hornaday's widow sought benefits under the conditional receipt.

Relying on *Hakey* and *Kaiser* as June does here, Hornaday's widow argued that under Indiana law, an insurance company could terminate a temporary insurance contract only if the company notified the applicant of the termination within the applicant's lifetime and returned the premium the applicant had paid. See *Hornaday*, 597 F.2d at 92. Because the insurer had satisfied neither of those requirements, Hornaday's widow argued that the

insurer was on the hook for coverage regardless of the expiration of the time limit in the conditional receipt. The insurer, in turn, argued that *Barr v. The Insurance Co. of North America*, 61 Ind. 488 (1878), controlled. *Barr* dealt with interim fire insurance under a conditional receipt that stated it would expire 30 days from the date of the insurance application. The loss occurred before the insurer made a decision to issue or deny a policy, but after the 30 days had run. The *Barr* court held that the insurance company was not liable because "the written contract of assurance expired by its own limitation, before the loss occurred." *Barr*, 61 Ind. at 493.

Looking to *Kaiser*, *Hakey*, and *Barr*, we explained in *Hornaday* that if the insurer had wanted to terminate coverage *within* the 60-day period of the conditional receipt, it would have been required to give notice of termination and return the premium Hornaday had paid. Otherwise, Hornaday's premium and application provided him with life insurance for only 60 days. Hornaday did not pay a premium for insurance beyond 60 days, and the insurer did not deliver the life insurance policy. Therefore, Hornaday's coverage terminated when the conditional receipt expired. Because Hornaday died outside of the coverage period, his widow was not entitled to benefits under the conditional receipt. *Hornaday*, 597 F.2d at 93-94.

*Kaiser* and *Hakey* stand for the general proposition that an insurance company cannot accept an application and a premium from an applicant, giving the applicant reason to believe he is insured, and then, when the worst happens, avoid liability by asserting that the applicant was not an

insurable risk after all. In that scenario the insurer would have accepted a premium without accepting any risk, an outcome that *Kaiser* and *Hakey* recognized, of course, to be patently unfair. The public policy underlying these cases does not extend, however, to a case such as this in which the conditional receipt (and here, the application also) contains express and unambiguous language limiting interim coverage to a specific time period, as in *Barr*. Although *Barr* is over 130 years old, it is still good law in Indiana. It is consistent with Indiana contract law and is not inconsistent with the public policy expressed in *Kaiser* and *Hakey*. Based on the plain language of the application and the conditional receipt, we do not believe that Richard could have had any reasonable expectation of insurance coverage after the expiration of the 60-day period. Accordingly, as in *Hornaday*, the express termination of the conditional receipt after 60 days is controlling. We affirm the grant of summary judgment on this ground.

## II.  *Material Misrepresentation*

In its July 23, 2007 letter denying June's claim for benefits, Western Reserve stated that it believed that Richard's application contained "misrepresentations material to the risk that Western Reserve was asked to assume." When June brought suit, Western Reserve raised "material misrepresentation" as an affirmative defense. The parties filed cross-motions for summary judgment on the affirmative defense. Having found that any coverage provided by the conditional receipt expired after 60 days, the district court found it unnecessary to address whether Richard

made material misrepresentations about his health that might have voided his coverage. June argues that the district court erred by not granting her motion for summary judgment on this defense. We agree with the district court that any insurance coverage Richard might have had expired with the conditional receipt, and Western Reserve is not liable to June for death benefits for that reason. We need not determine either as a matter of law or fact whether Richard made misrepresentations and whether those misrepresentations were sufficiently material to void his coverage. The issue remains moot on appeal.

III. *Bad Faith*

Indiana law recognizes that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. See *Erie Insurance Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). The duty arises out of the "special relationship" that exists between the insurer and the insured, which at times is contractual and arms-length but can also be fiduciary in nature. See *id*. Under Indiana law, a breach of that fiduciary duty can give rise to a tort claim for the insurer's failure to deal with its insured in good faith. See *id*. at 519. June alleged that Western Reserve breached its duty of good faith. The district court granted Western Reserve's motion for summary judgment on June's bad faith claim.

On appeal, June argues that Western Reserve's allegedly shifting reasons for denying benefits under the policy were, for various reasons, "pretextual, irrational and unprincipled." June Br. at 45-50. But, having found that

any coverage under the conditional receipt expired on its own terms at the end of 60 days and that Richard was uninsured on his date of death, we need not address this argument. June also contends that Western Reserve's failure to take even basic steps toward processing Richard's application for life insurance during his lifetime also amounted to tortious bad faith. Western Reserve has offered no explanation of its failure to process Richard's application. Its conduct in this case looks like a poor way to run an insurance company. Nevertheless, we find that Indiana law does not support (at least not yet) a bad faith claim brought by an applicant for insurance based on the insurer's handling of the application.

In Richard's life insurance application, dated November 13, 2006, he disclosed that he had been treated for bipolar disorder after being diagnosed in September 2005, that he was taking medication for his condition, and that his attending doctor was Dr. Nasr. He provided Dr. Nasr's office address. On November 27, 2006, Western Reserve advised Richard Newcomb, the agent who had accepted Richard's application on behalf of the company, that it needed a blood test, Richard's vital signs, and his motor vehicle records. The test results and the requested documents were provided. On December 8, 2006, Western Reserve requested Dr. Nasr's records through an intermediary, Examination Management Services, Inc. A member of Dr. Nasr's office staff informed Management Services that an administrative copying fee of $20.55 and a HIPAA-compliant release form were needed before Dr. Nasr's office could release the records. On December 22, 2006, Dr. Nasr's office called Richard and told him that a new

authorization form was needed before it could release his records. June and Richard immediately went to Dr. Nasr's office and Richard signed the required authorization. The records were then available to either Western Reserve or Management Services upon payment of the nominal copying fee.

Apparently unaware that the Kimmels had provided the requisite authorization, Western Reserve contacted Newcomb on December 26, 2006, and advised him that Dr. Nasr's office needed a new authorization. After that, the next action Western Reserve took on Richard's application was to instruct Management Services to close its file without securing Dr. Nasr's records. The Kimmels were not made aware of this. In fact, on January 23, 2007, June provided her personal history to Western Reserve as part of the application process, after the 60-day period covered by the conditional receipt for decision-making had already expired.

When Richard was killed on February 26, 2007, the only affirmative actions Western Reserve seems to have taken on his application were to request blood work and vital signs (which were provided and which did not reveal any physical conditions relevant to Richard's application), to request Richard's driving history and June's personal history, and to request Dr. Nasr's records. Western Reserve then inexplicably closed Richard's application without receiving the records from Dr. Nasr. It did not notify Richard that his application had been rejected, it simply did nothing. The appellate record, the briefs, and Western Reserve's counsel at argument have offered no explanation for this lapse.

Although Western Reserve's lack of action is inexplicable, unfortunately for June it is not actionable under existing Indiana law. June has not directed us to, and we have not found, Indiana decisions recognizing an insurer's duty of good faith in its handling of applications with those who are not yet its policyholders. In the key case first recognizing an insurer's duty of good faith, the Indiana Supreme Court wrote: "The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Hickman*, 622 N.E.2d at 519. The *Hickman* list of examples is not exclusive, but we have not detected any signs that Indiana is likely to extend its reasoning to an applicant for insurance. In granting Western Reserve's motion for summary judgment on this issue, the district court relied on *Metropolitan Life Insurance Co. v. Brady*, 174 N.E. 99 (Ind. App. 1930). In considering an appellant's claim that an insurance company was liable for negligent delay in acting upon an application for life insurance, that court wrote:

> this court as presently constituted cannot perceive how a tort liability can be predicated upon an insurance company until and unless some legal duty devolved upon the insurance company to either accept or reject an application for insurance within a reasonable time. This legal duty must arise by virtue of some express provision of the statute or from the contractual relation existing between the parties whereby a legal duty, not

> a moral duty, devolves upon the insurance company to act within a reasonable time upon an application submitted.

*Brady*, 174 N.E. at 102. Although *Brady* is dated and came long before *Hickman*, it is still good law in Indiana.[2] June has not pointed to any statutory or contractual basis on

---

[2] June points out that the *Brady* court, in discussing cases from other jurisdictions, acknowledged a Colorado case that held: "When a company has received the first premium, and it is to apply from the date of application, fair dealing requires that the company act upon the application within a reasonable time. Otherwise, it would be permitted to hold the applicant's money, with no return, for such time as it saw fit; a condition which cannot be supposed to have been intended by the parties." *Brady*, 174 N.E. at 101, quoting *De Ford v. New York Life Insurance Co.*, 224 P. 1049, 1051 (Co. 1924). Courts in other states have imposed a duty under common law on insurers to accept or deny an insurance application within a reasonable time, relying on a wide variety of tort theories to protect applicants from the unfairness that can result when an insurer holds a premium for a long time. See 16 Williston on Contracts §§ 49:43 and 49:44 (4th ed.). *Brady* declined to find such a duty under Indiana law, however, and no Indiana court has indicated a different view. As is evident from the discussion in Williston, the breach-of-contract analysis used in *Kaiser* and *Hakey* serves to protect Indiana applicants from the same risk of unfairness that other courts have addressed through the variety of tort theories. Although *Kaiser* and *Hakey* did not protect Richard here, the time limit on Western Reserve's conditional receipt provided a comparable limit to protect him and his family for a time, but the time was not open-ended.

which Indiana law would impose a duty on Western Reserve to accept or reject Richard's application within a reasonable time. The relationship between an insured and an insurer is different enough from the relationship between an applicant and a prospective insurer that we cannot predict with any confidence that the Indiana Supreme Court would extend *Hickman* to the latter.

Although Western Reserve deserves criticism for its handling of Richard's application for life insurance, its behavior is not actionable under Indiana tort law. On this issue, too, we affirm the district court.

AFFIRMED.

11-23-10