# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-1170

HABIBOLLAH TABATABAI,

*Plaintiff-Appellant,*

*v.*

WEST COAST LIFE INSURANCE COMPANY,

*Defendant-Appellee,*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-00227-JPS—**J.P. Stadtmueller,** *Judge.*

ARGUED SEPTEMBER 12, 2011—DECIDED DECEMBER 16, 2011

Before BAUER, ROVNER and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* The plaintiff-appellant, Habibollah Tabatabai ("Tabatabai") sued defendant-appellee West Coast Life Insurance Co. ("West Coast Life") for breach of contract and for a violation of West Coast Life's implied duty of good faith and fair dealing. West Coast Life moved for summary judgment and the district court granted the motion on December 21, 2010. This appeal followed. We affirm.

## I. BACKGROUND

On June 17, 2006, Tabatabai's wife, Firouzeh Keshmiri ("Ms. Keshmiri"), completed an application for a $500,000 life insurance policy with the assistance of Darrell Alvine ("Alvine"), a neighbor and licensed insurance intermediary. The application required Ms. Keshmiri to choose a specific rate classification for which she wished to apply. The options included "Super Preferred," "Preferred," "Standard," "Rated," and "Other." Ms. Keshmiri opted for the "Super Preferred" classification and delivered the application, together with an initial payment in the amount of $100, to Alvine. In addition to the $100 payment, Ms. Keshmiri signed a conditional receipt agreement ("CRA") with West Coast Life. "[A CRA] is a device used by the life insurance industry through which an applicant is immediately insured upon payment of the initial premium at the time of application and upon satisfaction of various conditions precedent to coverage." *Tabatabai v. West Coast Life Ins. Co.*, No. 08-cv-227, 2010 U.S. Dist. LEXIS 135507, at *13 (E.D. Wis. Dec. 21, 2010).

West Coast Life's CRA stated in part:

CONDITIONS UNDER WHICH INSURANCE MAY BECOME EFFECTIVE PRIOR TO POLICY DELIVERY

Unless each and every condition below has been fulfilled exactly, no insurance will become effective prior to policy delivery to the Owner:

(A) on the Effective Date the Proposed Insured(s) is (are) insurable exactly as applied for under the Company's printed underwriting rules for the plan, amount and premium rate class applied for;

. . .

(C) the Proposed Insured(s) has/have completed all examinations and/or tests requested by the Company;

. . .

TERMINATION AND REFUND OF PREMIUM

There shall be no insurance coverage under this Agreement and this Agreement shall be void if:

. . .

(B) if the application to which this Agreement was attached is not approved as applied for by the Company within ninety business days from its date.

On June 28, 2006, Ms. Keshmiri met with a paramedical examiner and submitted blood and urine specimens for lab testing. Once available, the lab results were promptly sent to Ms. Keshmiri. Among the various tests conducted, one indicated that her cholesterol level of 229 was outside the usual clinical range of 140-199.[1] In addition, Ms. Keshmiri's urine sample raised concern due to a high number of red blood cells and was considered, at best, inconclusive. By July 6, 2006, West Coast Life had ordered its insurance broker, The O'Brien Financial

---

[1] The record indicates there were other blood tests with results exceeding the usual clinical range for a "Super Preferred" applicant. However, Ms. Keshmiri's cholesterol test was focused on in the summary judgment and oral argument phases of litigation because of its significant impact on her potential insurability.

Group, Inc.[2], to obtain Ms. Keshmiri's medical records from her physician and to request a second urine specimen from Ms. Keshmiri. The request for the second urine specimen occurred sometime in July or August of 2006, though the exact date remains unclear.

On July 22, 2006, Ms. Keshmiri was hospitalized and diagnosed with a brain tumor and two days later she underwent surgery for its removal. The next day, July 23, 2006, Alvine alerted O'Brien Financial that Ms. Keshmiri was expecting O'Brien Financial to call to arrange for a second urine test.

Finally, On August 9, 2006, West Coast Life declared Ms. Keshmiri uninsurable based on her brain surgery. A little over a year later, Ms. Keshmiri died. It is Tabatabai's position that the request for the second urine specimen was communicated to Ms. Keshmiri in a untimely and ineffective fashion; that but for West Coast Life's delay, Ms. Keshmiri would have qualified for coverage prior to her brain tumor diagnosis.[3]

---

[2]  The O'Brien Financial Group, Inc., a general broker agent of West Coast Life, was one of the original defendants named in the complaint by Tabatabai. However, Tabatabai voluntarily dismissed his claims against The O'Brien Financial Group rendering West Coast Life the sole defendant.

[3]  At some point between Ms. Keshmiri's hospitalization and her denial of an insurance policy, a second urine sample was obtained and tests indicated it contained higher-than-normal levels of bacteria, the cause of which (whether due to illness or improper obtainment) remains unresolved.

On January 29, 2008, Tabatabai filed a complaint in the Milwaukee County Circuit Court naming West Coast Life and The O'Brien Financial Group as defendants. Pursuant to 28 U.S.C. § 1332, West Coast Life removed the action to the United States District Court for the Eastern District of Wisconsin. After voluntarily dismissing the claim against The O'Brien Financial Group, Tabatabai filed an amended complaint against West Coast Life asserting four causes of action: (1) breach of contract; (2) estoppel; (3) bad faith; and (4) negligence. West Coast Life filed a motion for summary judgment. In responding to the motion, Tabatabai chose to pursue the breach of contract claim, and breach of the implied duty of good faith and fair dealing. On December 21, 2010 the district court granted West Coast Life's motion for summary judgment and Tabatabai timely appealed.

## II. DISCUSSION

The grant of summary judgment included a finding that no genuine issue of material fact on which Tabatabai could prevail. We review the grant of summary judgment *de novo* and construe all facts in favor of the non-moving party. *Kimmel v. Western Reserve Life Assur. Co.*, 627 F.3d 607, 608 (7th Cir. 2010). Tabatabai argues that the district court erred (1) when it determined that Tabatabai was required to provide evidence of intentional or purposeful misconduct in order to invoke the doctrine of prevention, and (2) when it determined that West Coast Life did not owe an implied duty of good faith and fair dealing.

### A. The Doctrine of Prevention Claim

Tabatabai argues that the district court erred when it ruled that he was required to provide evidence of intentional or purposeful misconduct before invoking the doctrine of prevention. In contract law, the general principle known as the doctrine of prevention provides that, "if one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused." 13 Richard A. Lord, Williston on Contracts § 39:3 (4th ed. 2000). Tabatabai argued that the doctrine of prevention should be applied here because of West Coast Life's failure to notify Ms. Keshmiri of the need for a second urine specimen in a timely fashion. According to Tabatabai, West Coast Life's unreasonable delay and failure to adequately notify Ms. Keshmiri of its request for a second urine specimen prevented Ms. Keshmiri from satisfying that condition, and therefore West Coast Life should be barred from relying on her failure to satisfy the condition as a defense to enforcement of the CRA. Tabatabai directs our attention to two cases. The first one, *N.L.R.B. v. Local 554, Graphic Commc'ns Int'l, AFL-CIO*, is a case involving a dispute over a collective bargaining agreement. *N.L.R.B v. Local 554, Graphic Commc'ns Int'l, AFL-CIO*, 991 F.2d 1302 (7th Cir. 1993) In that case, the National Labor Relations Board sought enforcement of an order on behalf of World Color Press. World Color Press and the defendant labor union had entered into an agreement, the validity of which depended on approval by the international union. To satisfy this con-

dition, the defendant had to seek the approval of the international union president, which it refused to do. The evidence supported the Board's argument that it was the defendant's dilatory tactic of refusing to seek approval from the union president that prevented the agreement from becoming effective. On review, this Court enforced the Board's order based on the general principle behind the doctrine of prevention. We stated, "[T]he nonoccurrence or nonperformance of a condition is excused where that failure of the condition is caused by the party against whom the condition operates to impose a duty." *Id*. at 1302. In an effort to draw a parallel between *N.L.R.B.* and his suit, Tabatabai argues that this Court's use of "dilatory", with regard to the labor union's behavior, refers to something other than intentional or purposeful misconduct. We disagree.

West Coast Life's actions can be easily distinguished from that of the defendant labor union. West Coast Life acted in good faith in both the handling and the underwriting of Ms. Keshmiri's policy. Moreover, the record indicates multiple occasions in which agents of West Coast Life took steps in an effort to notify Ms. Keshmiri of the necessary second urine specimen prior to her hospitalization. Finally, as even Tabatabai admitted, there was at least one successful attempt, in the form of a voicemail, notifying her of their request. We agree that there is no evidence of a purposeful design on the part of West Coast Life to prevent Ms. Keshmiri from complying with the conditions required by the CRA.

The second case Tabatabai cites is *Rohde v. Massachusetts Mutual Life Ins. Co.* In that case, the appellant was a widow whose husband died of a heart attack on the same day he had completed an application and medical examination for life insurance. When the plaintiff sought to recover as beneficiary, the defendant denied her claim after determining that the deceased was not insurable under the policy for which he had applied. *Rohde v. Massachusetts Mut. Life Ins. Co.*, 632 F.2d 667, 668 (6th Cir. 1980). The Sixth Circuit determined that the insurance company had acted in bad faith and as a result the defendant "was without reasonable grounds in determining that plaintiff's husband failed to meet the requirements for the policy sought." *Rohde*, 632 F.2d at 670.

The record regarding Ms. Keshmiri suggests no such bad faith; rather, it suggests reasonable grounds for denying her a policy. Even setting aside the urine analyses, her cholesterol level was well beyond the usual clinical range for a "Super Preferred" applicant. It is undisputed that these results alone were grounds for denying the policy she applied for. Moreover, it is undisputed that West Coast Life was within its rights to deny Ms. Keshmiri a policy upon learning of her brain tumor. In any event, there was no evidence of purposeful misconduct, and the district court properly dismissed his claim.

### B.  The Good Faith and Fair Dealing Claim

The argument that West Coast Life violated an implied duty of good faith and fair dealing, required an initial

determination as to whether or not the district court erred in finding that no contractual agreement existed between the parties. The district court stated:

> [T]he language of the CRA is unambiguous and provides that insurability and completion of all tests or examinations required by West Coast Life shall be conditions precedent and, thus, must be satisfied prior to the effectiveness of coverage. . . . Therefore, in this case, an interim contract of insurance would arise *only* upon West Coast Life's good faith determination that the applicant was insurable exactly as applied for and upon the applicant's completion of all requested tests and examinations.

*Tabatabai v. West Coast Life Ins. Co.*, No. 08-CV-227, 2010 U.S. Dist. LEXIS 135507, at *5 (E.D. Wis. Dec. 21, 2010) (emphasis added).

By terms of the CRA, to form any contract between Ms. Keshmiri and West Coast Life, it was required that requests to Ms. Keshmiri by West Coast be satisfied and that West Coast Life approved the application and delivered the policy.

It is undisputed that Ms. Keshmiri did not submit the second urine specimen ordered by West Coast Life. It is also undisputed that Ms. Keshmiri's cholesterol test revealed results that exceeded the usual clinical range for a "Super Preferred" applicant. Because Ms. Keshmiri did not satisfy all of the necessary requirements, and because it was impossible for her to qualify for a policy "exactly as applied for," no contractual agreement existed.

Tabatabai contends that the district court erred in dismissing the claim that West Coast Life owed and breached an implied duty of good faith and fair dealing. According to Tabatabai, when Ms. Keshmiri provided her application, paid her initial $100 premium, and complied with West Coast Life's initial request for blood and urine specimens, she and West Coast Life entered into a binding contractual relationship rendering the CRA effective. While Tabatabai correctly argues that under Wisconsin law an implied duty of good faith and fair dealing exists in all contractual relationships, this argument ultimately fails. As both the district court and we have noted, because Ms. Keshmiri did not satisfy the conditions precedent required by the CRA, regardless of the unfortunate nature of the circumstances, no contract was ever formed. Established Wisconsin law states, "If there is no contract, the implied duty of good faith and fair dealing does not come into play." *NII-JII Entm't, LLC v. Troha*, 2007 WI App. 183 (Wis. Ct. App. 2007).

## III.  CONCLUSION

For the reasons stated, summary judgment in favor of the defendant-appellee is affirmed.