Deborah J. MEDING, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Civ. No. H 77–264.

United States District Court,
N. D. Indiana,
Hammond Division.

Feb. 10, 1978.

---

Barry D. Sherman, Hammond, Ind., for plaintiff.

Charles G. Bomberger, Hammond, Ind., for defendant.

## MEMORANDUM DECISION

McNAGNY, District Judge.

This matter comes before the Court on plaintiff's Motion for Summary Judgment on the Issue of Contract Liability and defendant's Motion for Summary Judgment. The parties at oral argument stipulated that:

(1) Indiana law is controlling in this case;

(2) Plaintiff is the named beneficiary on an application for insurance completed by the decedent (her husband) on June 14, 1977, from defendant insurance company;

(3) On June 14, 1977, the decedent tendered to defendant insurance company the sum of $31.50 for which the decedent received a "Prepayment Receipt";

(4) Plaintiff's husband was prevented from taking a medical examination in connection with said application for insurance due to his death on June 16, 1977;

(5) Defendant insurance company failed to notify the decedent that it had either accepted or rejected him as an insurable risk prior to his death on June 16, 1977;

(6) Thereafter, in timely fashion, plaintiff inquired about insurance benefits under the June 14, 1977, application and premium payment;

(7) In response to said inquiry, defendant insurance company disclaimed any liability on the theory that the events of June 14, 1977, did not create any contractual liability between defendant insurance company and the deceased named insured; and

(8) Defendant insurance company attempted to return the $31.50 prepayment, which was refused by the plaintiff.

The pleadings and affidavits on file, along with the parties' stipulations on oral argument "show that there is no genuine issue as to any material fact", Rule 56, Federal Rules of Civil Procedure, and therefore, the plaintiff is entitled to judgment as a matter of law on the question of contract liability.

The sole issue of law presented is whether under the facts stipulated, a conditional receipt created a contract of temporary or interim life insurance by reason of insured's payment of premium and acceptance thereof by the defendant insurance company.

In confronting the issue of conditional receipts, this Court discerns two opposing views. The first view is based upon the theory that the application for insurance is an initial step, that the absolute right to accept or reject such application is with the insurance company, and that until there is an acceptance, there is no contract of insurance. The plaintiff contends, however, that a contract of insurance is effective as of the date of the prepayment. The plaintiff does recognize that any insurance coverage is subject to the company's right to reject as of the date of the application, if, upon reasonable grounds, the applicant was not insurable upon that date. In such a situation, insurance would never have become vested and the insurance company could not be held liable. These two views may be termed, respectively, the condition precedent view and the condition subsequent view.

These two approaches were distinguished in *Western & Southern Life Insurance Company v. Vale,* 213 Ind. 601, 12 N.E.2d 350 (1938), where the Indiana Supreme

Court refused to construe the language of a form (conditional) receipt, given to an applicant for industrial insurance who tendered a premium payment with the application, to permit the insurer to say that it had not bound itself. In that case, the insurance company had solicited an application for industrial insurance from Vale, who tendered an initial premium payment with his application. Upon his payment, Vale completed a physical examination as required by the insurance company, and *before* a policy had been issued to him, he sustained a loss, which the Court found to be covered.

■ Today, in the spirit of *Vale,* both case authority and public policy in Indiana support the view that "a binding (conditional) receipt issued by a life insurer connotes an obligation, and when supported by valid consideration, suggests a contract." *Liberty National Life Insurance Company v. Hamilton,* 237 F.2d 235 (6th Cir. 1956). Two recent Indiana cases which support this proposition are *Kaiser v. National Farmers Union Life Insurance Company,* Ind.App., 339 N.E.2d 599 (1976), and *Monumental Life Insurance Company v. Hakey,* Ind.App., 354 N.E.2d 333 (1976).

*Kaiser* represents the strong public policy in Indiana which prohibits insurers from accepting premiums and then conditioning the receipts to prevent the insurer from incurring any risk during the period which it retains an applicant's premium, and during which an applicant might have reason to believe he was insured. In *Kaiser,* the insurance applicant had paid the first year's premium, undergone a medical examination, and received a conditional receipt. This receipt provided that insurance coverage would be effective as of a specified date provided that the company was satisfied that on that date the applicant was an insurable risk for the type of policy sought. The applicant died before the policy was approved and the trial court found no contract of insurance existed. The Appellate Court reversed, however, relying on the reasoning in *Prudential Insurance Company of America v. Lamme,* 83 Nev. 146, 425 P.2d 346 (1967), and *Service v. Pyramid Life Insurance Company,* 201 Kan. 196, 440 P.2d 944 (1968), which construed so-called "insurability (conditional) receipts" as binding contracts creating temporary insurance coverage subject to the insurer's later rejection of the risk.

As the Court concluded in *Kaiser,* it is now the law in Indiana that:

"Where . . . a receipt is issued by a life insurer and the receipt is supported by consideration, a contract is created. Any conditions contained in the receipt are to be treated as conditions subsequent thereby compelling an insurer to act affirmatively or negatively on the application. Moreover, where an application is not acceptable, he must be notified and the premium returned. An insurer cannot terminate the risk so assumed unless the applicant is so notified in his lifetime." *Kaiser, supra,* at 604.

In the *Hakey* case, which was decided shortly after *Kaiser,* the Court of Appeals for the Third District had an opportunity to pass on the First District Court of Appeals' decision in *Kaiser.* In *Hakey,* the decedent had filled out an application for life insurance with a provision for triple indemnity for accidental death. A premium of $8.50 was paid the company's agent, and the decedent was issued a conditional receipt. Prior to taking the required medical examination, the decedent was accidentally killed.

In passing on the company's argument that a contract for insurance did not exist, the Court summarily affirmed *Kaiser* and held that a contract was created and that any conditions were conditions subsequent.

These two decisions generally stand for the proposition that an insurer cannot accept a premium from an applicant, who has completed the insurer's own application and received a complicated and legalistically phrased receipt, giving the applicant reason to believe he is insured, and then disclaim insurance liability for the interim period because it is not satisfied that the applicant was an insurable risk. To allow insurers to disclaim liability during the interim period before acceptance or rejection of applicants would enable insurance companies to collect

premiums for a period during which there was in fact no insurance, and consequently no risk involved. In short, there is no *quid pro quo*. For, if it is the insurance company's purpose, by securing the payment of a premium, to attempt to minimize the chances of an applicant's changing his mind or applying to another company for insurance during the time his application is pending, then such a person is entitled to protection during that time. Moreover, once it is determined that the applicant is an acceptable risk, the usual practice of the insurance company is to back-date the policy and make it effective as of the date on which the prepayment receipt was issued.

The Court would also note that Professor Couch has cited *Kaiser, supra,* for the proposition that an applicant for insurance is protected pending acceptance or rejection by the insurer. 1 *Couch on Insurance 2d,* § 14:42, n. 6 (1977 Supp. at p. 137).

In its memo in support of its motion for summary judgment, the defendant has cited and relied upon *Thorne v. Aetna Life Insurance Company,* 407 F.2d 809 (7th Cir. 1969), affirming 286 F.Supp. 620 (N.D.Ind. 1968).

In *Thorne,* the decedent made an application for life insurance and paid the first month premium. The decedent received a "binding receipt", which provided that the insurance would "be effective from the date of medical examination . . . provided the Company shall be satisfied that on said date the applicant was insurable as a standard risk in accordance with its rules and practices for said amount on said plan." 407 F.2d at 810.

Prior to the taking of the required medical examination, the decedent was accidentally killed in an airplane crash. The District Court found, and the Appeals Court affirmed, that no contract of insurance was formed.

Within its opinion, the Seventh Circuit stressed the fact that the applicant (decedent) broke all appointments set up for a medical examination after repeatedly being informed of the necessity that it be taken. The Court went on, however, to point out that, despite the decedent's reluctance to take an examination, it was

"open to the plaintiff to show that (the decedent) had met the (company's) medical standards, *even though* he had never taken the required medical examination. This would, in effect, permit a person who had paid a sum to the insurance company and had been issued a 'binding receipt', but who died before taking a medical examination, to demonstrate by other evidence that he was insurable." 407 F.2d at 811. (Emphasis added).

It strikes this Court that *Thorne* is not controlling in the instant case. First, *Thorne* was decided nearly seven years prior to *Kaiser* and *Hakey, supra.* While the law of the State of Indiana may not have been explicit at the time of *Thorne, Kaiser* and *Hakey* have subsequently set forth the policy within this state.

Second, in *Thorne,* the decedent had not taken a medical examination due to his own inaction, even though a number of examinations had been set up. Here, the decedent was prevented from taking the initial medical examination because of his untimely death the day prior to his scheduled examination.

Finally, counsel for the plaintiff filed an affidavit, prior to the hearing on these motions, which, at least, suggests that the decedent may have been an insurable risk at the time of his death. This affidavit states that the decedent had three other policies with this same defendant. While not conclusive on the issue of insurability, the evidence here further distinguishes this case from *Thorne.*

In conclusion, in the instant case, the defendant insurance company received consideration from the insured and issued him a conditional receipt. This contract of insurance was effective until such time as the insurer rejected the insured during his lifetime. *Kaiser, supra.* Since the decedent was not notified during his lifetime and since the decedent had made a prepayment, a temporary contract of insurance was created. Further, the condition per-

taining to insured's medical examination should be treated as a condition subsequent under *Kaiser* and not precedent to a contract of insurance.

Therefore, this Court is compelled by both the weight of authority and public policy in Indiana, to GRANT plaintiff's Motion for Summary Judgment on the Issue of Contract Liability.