Darlene **HORNADAY,**
**Plaintiff-Appellant,**

v.

**SUN LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellee.**

**No. 78–1336.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1979.

Decided April 18, 1979.

Martha S. Hollingsworth, Indianapolis, Ind., for plaintiff-appellant.

Steven L. Strawbridge, Indianapolis, Ind., for defendant-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT, Circuit Judge, and EAST, District Judge.*

### PER CURIAM.

Appellant Darlene Hornaday appeals the District Court's summary judgment entered on February 6, 1978 in her action to collect $16,000 in proceeds on a life insurance policy issued by the appellee Sun Life Insurance Company of America (Sun Life) on the life of her husband (Hornaday), now deceased.

We note jurisdiction and affirm.

### FACTS

On February 19, 1975, Mr. Richard Snow, a salesman for Sun Life, met with the Hornadays. After the meeting, an application was signed for a $16,000 life insurance policy on Hornaday's life, with his wife, the appellant, as the named beneficiary. Pursuant to a computation made by Mr. Snow, the Hornadays tendered $12.16 to Sun Life and in exchange received a conditional receipt for life insurance coverage. On the reverse side of the conditional receipt, the following "CONDITIONS OF THIS RECEIPT" were printed:

"(A) . . . If the amount received was less than the full first premium, the insurance provided will be for (1) a period equal to such proportionate part of the first premium interval as the cash so paid bears to the full first premium or (2) a period of 60 days, whichever is longer.

. . .

". . .

"(C) Except as provided in this conditional receipt, any policy issued by the Company shall not take effect until it is delivered and the full first premium for it is paid during the lifetime and continued insurability, as stated in the agreement contained in the application, of the Proposed Insured."

The policy was issued on March 4, 1975, but was never delivered to Hornaday prior to his death. No further premium was ever tendered by Hornaday or collected by Sun Life.

Snow testified that between February 19 and May 6, he made between five and ten attempts to collect the full premium and issue a life insurance policy. Attempts were made both at Hornaday's place of work and at his residence. On May 6, for example, Snow and his field manager, Mr. Woodard, called upon Hornaday at work. Hornaday was too busy to see them at that time and suggested that they stop by his home later in the afternoon. Snow and Woodard arrived at the scheduled hour, waited for approximately 30 minutes, and when Hornaday did not appear, they left. However, they returned an hour later and found Mrs. Hornaday at home. They emphasized to her the importance of seeing Hornaday so as to collect the premium and deliver the policy. Snow left his business

---

\* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

card and asked Mrs. Hornaday to have her husband call to make an appointment. Snow was never contacted by Hornaday. Hornaday died on May 31, 1975.

After the death of Hornaday, Sun Life sent the appellant a check for $12.16 which she returned without endorsement.[1] Appellant made a demand upon Sun Life for payment of the proceeds from the policy. When Sun Life refused, this diversity action followed.

The District Court, in a well-reasoned memorandum order, held that the conditional receipt created insurance coverage for Hornaday, but that it had expired by its own terms 60 days from the date of the insurance application, February 19, 1975, and was not in effect when Hornaday died on May 31, 1975, over 100 days after the insurance application date.

## ISSUE ON APPEAL

There are no disputed facts, and we discern the only material issue to be whether the District Court erred in its determination that as a matter of law, the temporary contract of life insurance created by the conditional receipt was not in effect when the insured died.[2]

## DISCUSSION

Appellant's basic premise is that a temporary insurance contract can be terminated in Indiana only upon (1) notice of such termination by the insurance company to the applicant, and (2) a return of the consideration paid. She relies on two recent Indiana Court of Appeals cases for this proposition, *Monumental Life Insurance Co. v. Hakey*, Ind.App., 354 N.E.2d 333 (1976), and *Kaiser v. National Farmers Union Life Ins. Co.*, Ind.App., 339 N.E.2d 599 (1976). Neither of these two conditions having been satisfied, appellant concludes that a valid insurance contract was in effect on the date of her husband's death. On the other hand, Sun Life relies on *Barr v. The Insurance Co.*

*of North America*, 61 Ind. 488 (1878), a 100 year old case, still representing the law in Indiana, which considered a conditional receipt that expressly stated it would be for a term of 30 days from the date of the insurance application. The *Barr* Court held that the insurance company was not liable as "[t]he written contract of assurance expired by its own limitation, before the loss occurred . . . ." *Id.* at 493. The District Court recognized that *Barr* dealt with a fire insurance policy, but stated that "this is no reason to conclude that the decision is not applicable to the present situation involving a policy of life insurance. [A] conditional receipt is subject to the same rules of construction as any ordinary contract of insurance. No distinction is made among the various types of insurance."

*Meding v. Prudential Ins. Co. of America*, 444 F.Supp. 634 (N.D.Ind.1978), is helpful in the analysis here notwithstanding the fact that the Court was not presented with the issue of a conditional receipt expiring by its own terms. Related to the issue in the instant case, the issue in *Meding* was whether "a conditional receipt created a contract of temporary or interim life insurance by reason of insured's payment of premium and acceptance thereof by the defendant insurance company." *Id.* at 635. The deceased was prevented from taking a medical exam in connection with the application due to his death, and the insurance company had not notified the decedent whether it accepted or rejected him as an insurable risk prior to his death, nor did it return the payment made by the decedent prior to his death. The Court stated:

> "*Kaiser* represents the strong public policy in Indiana which prohibits insurers from accepting premiums and then conditioning the receipts to prevent the insurer from incurring any risk during the period which it retains an applicant's premium, and during which an applicant might have reason to believe he was insured.

1. Sun Life claims the tender of $12.16 was purely gratuitous since no policy had ever been delivered to Hornaday. The gratuitous tender has no impact upon the 60 day temporary coverage under the conditional receipt which had expired by its terms prior to the tender.

2. Without dispute, the law of Indiana applies.

In *Kaiser*, the insurance applicant had paid the first year's premium, undergone a medical examination, and received a conditional receipt. This receipt provided that insurance coverage would be effective as of a specified date provided that the company was satisfied that on that date the applicant was an insurable risk for the type of policy sought. The applicant died before the policy was approved

. . . .

". . .

"These two decisions [*Kaiser* and *Monumental*] generally stand for the proposition that an insurer cannot accept a premium from an applicant, who has completed the insurer's own application and received a complicated and legalistically phrased receipt, giving the applicant reason to believe he is insured, and then disclaim insurance liability for the interim period because it is not satisfied that the applicant was an insurable risk. To allow insurers to disclaim liability during the interim period before acceptance or rejection of applicants would enable insurance companies to collect premiums for a period during which there was in fact no insurance, and consequently no risk involved. In short, there is no *quid pro quo*. For, if it is the insurance company's purpose, by securing the payment of a premium, to attempt to minimize the chances of an applicant's changing his mind or applying to another company for insurance during the time his application is pending, then such a person is entitled to protection during that time." *Id.* at 636–37.

Hence, as the District Court here held, all three cases can be construed consistently.

"[T]he three decisions can be found entirely consistent with one another. *Barr* is concerned with the expiration of a conditional receipt. *Monumental* and *Kaiser* address the requirements to terminate a conditional receipt prior to its natural expiration."

Further:

"The findings in *Barr* were not mentioned in either *Monumental* or *Kaiser*. There is no reason to believe that these decisions have overruled the holding in *Barr* that a conditional receipt may expire by its own terms."

Neither *Kaiser* nor *Monumental* dealt with the issue of a conditional receipt expiring by its own terms. Those cases would properly require notification and a return of unaccrued or unrealized premiums or other consideration in order to terminate the applicant's life insurance coverage within the 60 day period. In the circumstances presented here, a contract for temporary life insurance for a period of 60 days was entered into between Hornaday and Sun Life with a paid premium for that period only. Hence, for Sun Life to have terminated coverage within the 60 day period, it would have had to give notice of such termination and return the unearned portion of the $12.16. However, without such affirmative action, the insurance contract would continue in full force until it expired by its own terms 60 days after execution.[3]

3. Appellant also relies on two cases from other jurisdictions, *Tripp v. Reliable Life Ins. Co.*, 210 Kan. 33, 499 P.2d 1155 (1972), and *Smith v. Westland Life Ins. Co.*, 15 Cal.3d 111, 123 Cal. Rptr. 649, 539 P.2d 433 (1975). Both cases present analogous situations; however, neither dealt with a conditional receipt which explicitly expired by its own terms. The Court in *Smith* specifically held that the conditional receipt involved, in contrast to the one at issue here, was ambiguous. The Court was also concerned with the insurance company's failure to include any provision as to how or when the temporary coverage was to be terminated in the event it rejected the application. In this vein, the Court stated:

"It [the policy] makes issuance of a *permanent* policy under the terms specified subject to company approval of the application and obligates the insurer to refund the applicant's premium if it fails to give its approval within 60 days. But the receipt is silent as to how and when the *temporary* coverage immediately created upon its execution may, or will, be *otherwise* effectively terminated if and when the insurer rejects the application." 123 Cal.Rptr. at 656, 539 P.2d at 440. (Emphasis in original).

Additionally, *Tripp* indicates that the insurance company made no attempts to contact the policyholder.

No notification of termination and return of consideration having occurred, the $12.16 premium payment provided Hornaday a $16,000 life insurance policy for 60 days beginning February 19, 1975. There having been no payment of an additional premium or the delivery of an actual policy of insurance to Hornaday, life insurance coverage did not extend beyond the period specified in the conditional receipt.

Appellant points out the excellent policy reasons behind the *Kaiser* and *Monumental* decisions. The Indiana courts have focused special concern on the conduct of the life insurance industry and the courts have been critical of the practice of some carriers to receive and retain unearned premiums, yet refusing to provide coverage. However, the decision here does not contravene Indiana's legislative and judicial policy with regard to interim contracts. Sun Life's actions appear to have been entirely fair, proper, and reasonable. The District Court found the terms of the conditional receipt to have been both unambiguous and obvious, stating that the 60 day period was "not a hidden phrase filled with legal technicalities buried within the small print of the contract."

Indeed, as suggested by the District Court:

"Accepting the plaintiff's position on the applicability of *Monumental* and *Kaiser* to the present case could produce results that were surely not intended by the Courts rendering those decisions. The application of plaintiff's interpretation of *Monumental* and *Kaiser* would effectively mean that once a conditional receipt is executed insurance coverage is in effect *ad infinitum*, regardless of the amount of the consideration tendered, unless notice of termination is given and the consideration returned. Hence, if the insured successfully avoids contact with the insurer, insurance coverage is in effect indefinitely regardless of the amount of the consideration paid. The result could be that in exchange for $12 or $15 an insured is effectively covered for as long a period as he can avoid contact with the insurer

when an actual monthly premium would be much greater than the amount tendered if a regular insurance contract were issued."

Appellant further argues that Mr. Snow's action in attempting to deliver the life insurance policy after the 60 day limit had expired had the effect of waiving the provision of the conditional receipt providing for the expiration of the temporary insurance coverage. However, we agree with the District Court that such action was not a waiver of the provision.

"It is only natural to conclude that once an applicant has been determined by an insurance company to be an insurable risk, every effort by the insurance company's agent will be made to deliver the policy and collect any owing premium. The agent's livelihood is dependent upon the sale of policies, not the issuance of conditional receipts. It is also reasonable to believe that an applicant for an insurance policy who has tendered at least a partial premium and in exchange has received temporary coverage would take reasonable steps to obtain a permanent policy within the period of temporary coverage in order to assure that his protection will be continuous. . . . Had Mr. Snow been successful in his attempts to issue the policy or had the decedent sought out Mr. Snow and obtained a policy continuing coverage would have existed if this were done prior to the expiration of 60 days. Had the actual policy been issued after the expiration of the conditional receipt coverage would be reinstated on that date. There would be no waiver of the terms of the conditional receipt by an agent's attempt to issue a policy after the expiration of the conditional receipt."

Lastly, appellant's contention that Sun Life failed to show that the Indiana Department of Insurance has authorized or acknowledged the legal efficacy of the 60 day policy was not presented to the Court below and we decline to consider the issue.

"We have long adhered to the general rule that a litigant may not present on

appeal as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide." *Youker v. Gulley*, 536 F.2d 184, 186 (7th Cir. 1976).

Accordingly, the judgment entered on February 6, 1978 is affirmed.

AFFIRMED.