No. 55,854

JIM HAVENS, d/b/a HAVENS CONSTRUCTION COMPANY, *Appellee,* v. SAFEWAY STORES, A Corporation and L. R. FOY CONSTRUCTION CO., INC., *Appellants.*

(678 P.2d 625)

Opinion filed March 24, 1984.

*William L. Mitchell,* of Mitchell and Henry, of Hutchinson, argued the cause and was on the brief for appellant.

*Gene H. Sharp,* of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Defendant L. R. Foy Construction Co., Inc. (Foy) appeals from a judgment granted plaintiff Jim Havens d/b/a Havens Construction Company (Havens) in a dispute between Foy, the general contractor, and Havens, a subcontractor, over performance of a construction contract. The trial court rendered judgment for Havens in the amount of $40,422.00 and Foy has appealed. The case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

Foy was the general contractor for the construction of a new building for Safeway Stores, Inc. (Safeway) in Liberal, Kansas.

Havens, a cement contractor, submitted a proposal to do the concrete work for $124,000.00 which was accepted by Foy and the two entered into a written contract in March, 1980. Under the contract plaintiff undertook to furnish all material, equipment and labor necessary for the complete cast-in-place concrete portion of the work to be performed in strict accordance with the plans and specifications prepared by Safeway and its architect. The instant case arose from a dispute over the method of payment and certain alleged breaches of the contract by Havens. Prior to the beginning of construction, Foy held a meeting with all the subcontractors at which representatives of Safeway outlined their method of payment. The subcontractors were to submit to Foy, as general contractor, an invoice by the 25th day of each month setting forth the amount claimed to be due for work performed. They were then to be paid for 90% of the amount claimed if it was found to be the correct amount based upon the percent of the work completed. Foy, after checking and verifying the percent of work completed and amount claimed, would then send all of the invoices to Safeway in Oklahoma City. If that office approved the invoices they were then returned to Foy, who would forward them to Safeway headquarters in Oakland, California. In due course the Oakland office would send one check for the approved amount to Foy who in turn paid the subcontractors. This rather lengthy procedure might take from four to six weeks depending upon how fast each party to the procedure processed the necessary paper work.

Havens commenced work on March 20, 1980, but did not submit an invoice for any of his work until April 23, 1980. As he had only worked a few days in March, he evidently chose to combine the March and April invoices in a total amount of $24,000.00. Foy combined this invoice with those from other subcontractors and sent them to the Oklahoma City division of Safeway. That office checked, verified, and approved the invoices for payment and mailed them back to Foy. Foy then forwarded these invoices to Safeway's Oakland, California office for payment. A check was drawn by that office on May 23, sent to Foy, and Havens received payment on May 31. Thus there was a time interval of thirty-six days between April 25 and payment to Havens. This was the standard process for payment on the invoices, and was explained to the subcontractors at a meeting

before they began work. There is a dispute about the date the May invoice was received by Foy but it was dated May 23 and processed through the Oklahoma City and Oakland offices of Safeway. The check from Safeway was drawn July 3, 1980, and mailed to Foy who in turn was to pay the subcontractors. Thirty-nine days elapsed between the May 25 invoicing date and the drawing of the check at Oakland. Foy received the check within a few days thereafter.

During this time, Havens experienced several difficulties with the construction project. He was unable to keep an adequate number of men on the job to ensure work progressed in a timely fashion, and Foy responded by furnishing Havens with additional help. Contrary to Article XIII of the contract, Havens employed other subcontractors on the job without Foy's permission. Weather problems were encountered, but Havens submitted no requests for additional time for these delays as he was entitled to under the contract. Finally, the cement work Havens completed met neither the specifications for levelness nor strength.

On May 31, 1980, Foy served Havens with a 72-hour deficiency notice under Article V of the contract. Havens put more men on the job in an effort to catch up with the schedule, but to no avail. Claiming a lack of money to meet his payroll and pay for his supplies, Havens discontinued his work and walked off the job on July 3, 1980, and never returned. It then became necessary for Foy to find a new cement contractor to remedy the alleged deficiencies in Havens' work and complete the concrete work.

Thereafter Havens filed suit against Foy and Safeway seeking recovery of $62,542.00 which he alleged was the balance due for the work he had completed. There were numerous procedural questions in the trial court involving the filing of a mechanic's lien by Havens and the joining of certain bonding companies as parties defendant. However, the issues on appeal are solely between Havens and Foy and we will make no further reference to the other parties. Prior to answering, Foy filed a motion seeking to have the dispute arbitrated, which it alleged was required by the contract. When this motion was denied Foy filed an answer and a counterclaim for actual and punitive damages for alleged breach of the contract by Havens and alleged willful

and malicious conduct of Havens. Following a trial to the court judgment was rendered in favor of Havens for $40,422.00. The trial court found that Foy had breached the contract with Havens by failing to make timely payments in accordance with the prevailing industry practice which the court found called for payment every thirty days. Foy has appealed.

In the first issue on appeal Foy claims the trial court erred in failing to order arbitration pursuant to the contract and the Uniform Arbitration Act. In support of this contention, Foy points to Article II of the contract:

"All disputes, claims or questions *subject to arbitration under this contract* shall be submitted to arbitration in accordance with the provisions as contained in the standard form of the American Institute of Architects general conditions of the contract for the construction of buildings." (Emphasis added.)

and to K.S.A. 5-401:

"**Validity of arbitration agreement.** A written agreement to submit any existing controversy to arbitration or a provision in a written contract, other than a contract of insurance or a contract between an employer and employees or between their respective representatives, to submit to arbitration any controversy, other than a claim in tort, thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Foy's position is that arbitration applies to *all* controversies arising under its contract with Havens. Havens, however, points out the clear language of the contract does not require arbitration for *every* dispute or claim, but only those expressly "subject to arbitration under this contract." Reference to other provisions of the contract shows the parties agreed to arbitrate particular issues that might arise, such as variations in pay required by alteration of work, but they nowhere agreed to arbitrate disputes such as that before the court. The trial court ruled:

"I find no agreement to arbitrate exists between the parties hereto. The plaintiff's contract provides for limited arbitration with the contractor defendant in cases of change orders, and there is no written agreement between plaintiff and the owner defendant. Therefore the motion to refer to arbitration is denied."

The contract here did not track the language of K.S.A. 5-401 insofar as requiring arbitration of *any* controversy, and the trial court properly found that plaintiff's claim did not fall within that narrow class of disputes made subject to arbitration by the contract.

The next issue is that the court committed error in finding that Foy had breached the contract by failing to pay Havens according to prevailing industry practice. The court stated:

"I have decided . . . that the plaintiff was justified in terminating his contract with the defendant Foy Construction Company for failure of timely payment. I find the prevailing industry practice to be payment every thirty days based upon ninety percent of the work completed during the billing period."

Appellant Foy contends that it was error for the trial court to rely on custom and practice in the industry when the contract between Foy and Havens specifically provided otherwise. The provision of that contract dealing with payment reads:

"ART. VIII. It is mutually agreed between the parties hereto that the sum to be paid by the General Contractor to the Sub-Contractor for said work and materials shall be TOTAL CONTRACT AMOUNT, INCLUDING ALL APPLICABLE TAXES AND A PERFORMANCE & PAYMENT BOND, SHALL BE FOR THE SUM OF: ONE HUNDRED TWENTY FOUR THOUSAND DOLLARS, ($124,000.00) . . . .
ALL INVOICES SHALL BE IN THIS OFFICE BY NO LATER THAN THE 25TH OF EACH MONTH.
ANY INVOICE RECEIVED AFTER THE 25TH WILL BE SENT INTO SAFEWAY ON THE FOLLOWING MONTHS ESTIMATE
subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the General Contractor to the Sub-Contractor. The Contractor agrees to pay Sub-Contractor such sums based on Sub-Contractor's estimates for partial payments as are approved by the Architect, less retainages in the amounts specified in the specifications, or if none be so specified, then in the amount of 10%. Provided, however, contractor shall be under no obligation to pay sub-contractor for any work done hereunder until Contractor has been paid therefor by Owner, and the acceptance of any such work and payment therefor shall not relieve Sub-Contractor from liability for defects in such work which may thereafter be discovered." (Emphasis added.)

While there was sufficient evidence presented to establish the prevailing industry practice as it pertains to partial payments, the question is whether the court was justified in relying on custom and usage in the industry when the contract provided that Foy would be under no obligation to pay Havens until Foy was paid by Safeway.

We have previously held that:

"Custom and usage may be shown to elucidate or explain something ambiguous in a contract, but where the contract is clear and complete it cannot be changed or supplemented by evidence of a local custom . . . ." *Stanly v. Buser*, 105 Kan. 510, Syl. ¶ 2, 185 Pac. 39 (1919).

Havens contends that the language "all invoices shall be in this

office by no later than the 25th of each month. Any invoice received after the 25th will be sent into Safeway on the following months estimate" implies that monthly payments are to be made by Foy or, at the very least, creates such an ambiguity that the trial court was justified in relying on custom and usage or prevailing industry practice. We do not agree. The critical provision of the contract reads:

*"Provided, however, contractor shall be under no obligation to pay sub-contractor for any work done hereunder until Contractor has been paid by Owner  .  .  .  ."*

We find nothing ambiguous about this provision and, being clear and complete, it cannot be changed or supplemented by evidence of prevailing industry practice.

It is not within the province of a court to reform an instrument by rejecting words of clear and definite meaning and substituting others. *Campbell v. Fowler,* 214 Kan. 491, 520 P.2d 1285 (1974). When a written instrument is complete, the court will not imply an additional term. *Burge v. Frey,* 545 F. Supp. 1160 (D. Kan. 1982). Language in a contract is ambiguous only when the words used to express the meaning and intention of the parties are insufficient in that the contract may be understood to reach two or more possible meanings. *First Nat'l Bank of Olathe v. Clark,* 226 Kan. 619, 602 P.2d 1299 (1979).

Assuming arguendo that monthly payments should have been made, we cannot say that the minor delays encountered here would constitute such a breach that would justify Havens in abandoning the contract. The April invoices were paid May 31, only six days beyond a monthly payment date of May 25 if we assume prevailing industry practice controls and the check for the May invoices was drawn July 3, only eight days after the June 25 payment date. By that time Havens had already walked off the job. We conclude the court erred in disregarding the clear contractual language and in resorting to prevailing industry practice to find a breach of the contract by Foy. The payments by Foy were timely under the contract.

In view of the foregoing, it is not necessary that we consider the other points raised on appeal.

The judgment is reversed and the case remanded for a new trial.

PRAGER, J., not participating.