No. 66,484

GROVER THOMAS, *Appellee,* v. RONALD THOMAS, *Defendant,* and
MONUMENTAL LIFE INSURANCE COMPANY, *Appellant.*

(824 P.2d 971)

Opinion filed January 17, 1992.

*Allen R. Slater,* of Armstrong, Teasdale, Schafly & Davis, of Overland Park, argued the cause, and *Gerald A. King,* of the same firm, was with him on the briefs for appellant.

*Robert E. Wonder,* of Kansas City, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a breach of contract action arising out of an application for life insurance. Richard I. Thomas applied for life insurance from Monumental Life Insurance Company (Monumental) through its agent, Ronald Thomas, who was also Richard's

brother. Richard applied for the insurance on July 2, 1986, and died January 28, 1987 without being issued an insurance policy or being refunded the first month's premium he had paid at the time of application. Grover Thomas (Grover), the beneficiary of Richard's life insurance, brought this action against Ronald and Monumental contending they owed him the proceeds of Richard's insurance because Richard was covered at the time of his death by the temporary coverage provided by the conditional receipt given to Richard at the time of application. The trial court entered judgment in favor of Grover and against Monumental. Monumental appeals.

Let us examine the controlling facts. On July 2, 1986, Richard applied for $50,000 of life insurance coverage from Monumental through its agent, his brother Ronald. Richard named his father, Grover Thomas, as the beneficiary. At the time the application was written, Richard paid the initial monthly premium of $16.45 in cash. Because of Richard's age, he was not required to get a medical physical before being issued insurance.

In exchange for the application and premium payment, Ronald signed and gave Richard a conditional receipt, which stated in part:

"IMPORTANT: THIS CONDITIONAL RECEIPT DOES NOT PROVIDE ANY INSURANCE UNTIL ALL CONDITIONS ARE MET.

. . . .

"(1) If all the following conditions are met the insurance applied for shall become effective as of the date of this receipt or the latest required medical examination, whichever is later, subject to the terms and conditions of the policy applied for. The conditions are:

(a) payment of an amount equal to the first full premium for the benefits applied for to the Agent at time of signing the application.

(b) completion of the application; provided, however, that if the Company makes any change as to amount, classification, plan of insurance, age, benefit, or adds any restrictive rider, the applicant's written acceptance of such change is necessary before any insurance becomes effective.

(c) all required medical examinations have been completed.

(d) and the Company is satisfied that on the date of the application each person to be insured is a risk insurable and acceptable under its rules, limits and standards for the plan and amount applied for at its standard rate of premium.

"(2) *If within 45 days from the date hereof a policy has not been issued*

*to the applicant, then the application shall be deemed to have been declined by the Company and any deposit paid will be refunded.*

"(3) No agent has the authority to modify the application or this receipt, or to bind the Company by making any promise or representation contrary to the provisions hereof." (Emphasis added.)

Monumental has a company policy against agents acting as witnesses for applications by the agent's relatives. The company's policy states:

"Applications upon your life, members of your immediate family or your relatives must be written by an unrelated licensed agent or member of management, who will also witness the signature. Your name, of course, is to be inserted in the space for placement and commission credit."

Despite this policy, Ronald had taken applications from his family members on numerous prior occasions, including applications by his wife, two daughters, an uncle, a sister, a niece, and his father. None of these applications had been written or witnessed by an unrelated agent. All these applications, however, had been accepted by Monumental and policies had been issued without inquiry by the company.

On July 2 or 3, 1986, Ronald submitted Richard's application, along with the $16.45, to Monumental. Richard's application was first given to an assistant district administrator, Lisa Florez, at Monumental's office in Kansas City. She questioned the validity of the application because it was written in violation of the company's policy. Florez, therefore, brought it to the attention of the district manager, P.J. West, rather than following the normal procedure of forwarding the application to the home office for consideration. Florez also gave West the $16.45 cash deposit which had been submitted with the application.

Upon review of the application, West determined Ronald had violated Monumental's policy against writing applications for relatives and witnessing relatives' signatures. On July 3, 1986, West rejected Richard's application and put it and the cash deposit in an envelope in Ronald's mail slot at the company office. West also enclosed a note asking Ronald to see West.

Although West and Ronald attended meetings twice a week at Monumental's office, they never discussed Richard's application. At trial, Ronald testified he never received the envelope with Richard's application and premium payment with West's note.

Monumental did not issue a policy to Richard. Richard paid no additional monthly premiums to Monumental. Monumental received no inquiries about the status of Richard's application from Richard or Ronald.

Richard died January 28, 1987, 165 days after the expiration of the conditional receipt. Upon denial of coverage by Monumental, Grover brought this action to recover the $50,000 proceeds from Richard's life insurance. The parties could not produce Richard's application at trial. The parties stipulated to the following facts:

"1. Grover Thomas is the father of Ronald Thomas and Richard I. Thomas, now deceased. Ronald Thomas and Richard I. Thomas are brothers.

"2. Ronald Thomas submitted an application for $50,000 life insurance on the life of Richard I. Thomas with the initial monthly premium of $16.45 on or about July 2 or 3, 1986, to Monumental General's Kansas City, Kansas, office.

"3. Ronald Thomas was employed as an insurance agent by Monumental General Life Insurance Company on or about July 2 or 3, 1986.

"4. On July 2, 1986, Ronald Thomas signed a 'Conditional Receipt.'

"5. No policy of life insurance was issued in 45 days nor was any policy of life insurance ever issued.

"6. After the initial payment of $16.45 no monthly insurance premiums were ever paid to Monumental General Life Insurance Company.

"7. Richard I. Thomas died on January 28, 1987."

At the close of Grover's case in chief at trial, Monumental moved for a directed verdict. The trial court, basing its decision upon *Tripp v. The Reliable Life Insurance Co.*, 210 Kan. 33, 499 P.2d 1155 (1972), denied Monumental's motion. After all the evidence was in, Monumental again moved for directed verdict and the trial court again denied the motion. The case went to the jury.

The jury returned the following verdict:

"1. Was Ronald Thomas acting within the scope and course of his authority as an insurance agent of Monumental Life Insurance Company when he took the application of Richard I. Thomas for life insurance with that company and witnessed his signature on that application? Answer yes or no: yes

"2. Did P. J. West review the application for insurance and reject it? Answer yes or no: yes

"3. Did P. J. West put the application and $16.45 in an envelope and place the envelope in Ronald Thomas' mail slot? Answer yes or no: yes

"4. Did Richard Thomas, during his lifetime receive notice that his application for insurance had been rejected and receive a refund of the $16.45? Answer yes or no: no

"5. Was Grover Thomas the named beneficiary in the application for insurance? Answer yes or no: yes"

Based upon the jury's verdict, the trial court entered a partial journal entry of judgment in favor of Grover and against Monumental. Monumental filed a motion to alter and amend the partial journal entry of judgment; the motion was denied. On March 21, 1991, the trial court entered a journal entry dismissing Monumental's cross-claim against Ronald and finalizing the judgment against Monumental. Monumental appealed.

The first issue is whether Richard's life insurance was in effect at the time of his death because of the temporary coverage provided by the conditional receipt.

Monumental argues *Tripp v. The Reliable Life Insurance Co.*, 210 Kan. 33, should be overruled or in the alternative its application should be narrowed. Monumental further claims the cases cited in *Tripp* do not support our holding in that case. In *Tripp*, one of Reliable's soliciting agents met with the plaintiff, Donald Eugene Tripp, who made an application for a family plan type of insurance on February 7, 1969. Tripp paid the initial premium and received a receipt. 210 Kan. at 34. The application stated in pertinent part:

" 'The Company shall have sixty (60) days from the date of receipt of the application at its Home Office in Webster Groves, Missouri (which is agreed to be a reasonable period) to determine the insurability of Proposed Insured on the basis on which application is made or on another basis. If the policy is not received by the undersigned(s) within that period the application will be deemed to have been declined by the Company. . . .' " 210 Kan. at 34.

The receipt given to Tripp provided in part:

" '. . . The insurance under the policy for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if, and when required by the Company), whichever is the later date, . . . .

" 'Company shall have 60 days from date of application to consider and act upon the application. Failure of the Company to offer a policy within such 60 days shall be deemed a declination.' " 210 Kan. at 34.

Tripp was never contacted by Reliable within the 60-day declination period. On May 23, 1969, the company's home office instructed its local agent to refund the premium deposit and retrieve Tripp's receipt. 210 Kan. at 39-40. On June 1, 1969, Reliable's agent tendered Tripp's initial premium and requested return of the conditional receipt. Tripp's daughter had died on May 29, 1969, 51 days after the 60-day conditional receipt expired. Tripp refused to return the receipt, claiming coverage. He then brought suit against Reliable for his daughter's life insurance benefits.

The trial court determined the company was estopped to deny insurance coverage and entered judgment against the company. 210 Kan. at 35. On appeal, this court held Reliable owed Tripp the life insurance proceeds despite the 60-day limit on temporary coverage found in the application and receipt. We stated:

"The only reason for failure to return the premium at the end of the sixty days would be that the company was still contemplating issuing the policy. We cannot support a rule which would permit an insurance company to make a decision on an application after the insured's death. We conclude under the facts disclosed in this record that when an application for life insurance is made and the company receives the initial premium and issues a receipt therefor, a policy of temporary insurance is created and said policy of temporary insurance *continues in effect until the insurance company declines the application, notifies the insured, and returns the premium, notwithstanding the provisions of the application and the receipt to the contrary.*" 210 Kan. at 38. (Emphasis added.)

Monumental argues the dissenting and concurring opinion written by Justice Fontron and joined by Justice Fromme is better reasoned. Justice Fontron contended the prior Kansas cases cited by the majority were not applicable to the facts presented in *Tripp*. He further stated no notice was required to terminate coverage because the application and receipt clearly stated the temporary coverage would not extend beyond 60 days. Justice Fontron, referring to the rule that insurance contracts are construed against the insurer, wrote:

"[T]he rule of strict construction does not relieve a tentative insurance purchaser of the obligation to read the papers which govern the transaction, nor was the rule intended to rewrite insurance contracts when they are fairly expressed and untainted by fraud." 210 Kan. at 41-42.

In *Tripp*, we relied upon *Waldner v. Metropolitan Life Ins. Co.*, 149 Kan. 287, 87 P.2d 515 (1939). *Waldner* involved an insured who sought to reinstate insurance coverage after it had lapsed for failure to pay a required premium. On August 31, 1934, the insured applied for reinstatement and gave a check for the premium payment to the insurance company's agent. 149 Kan. at 290. The check was accepted without receipt and later cashed. On September 18, 1934, the home office directed its agent to demand the insured undergo a medical examination before insurance would be issued, but the demand for an examination was never communicated to the insured. The insured died on October 30, 1934. The company denied coverage and the beneficiaries brought suit.

The trial court entered judgment in favor of the plaintiffs and this court affirmed. 149 Kan. at 295. In reaching our decision we stated:

"The defendant could not indefinitely hold the application for reinstatement without disapproving it, retain the money of the insured until long after her death, and thereafter escape liability on the ground the insured had not provided satisfactory proof of insurability." 149 Kan. at 292.

It is worth noting that in *Waldner* there was no written instrument with a specified expiration date. It involved an application for reinstatement after cancellation for nonpayment of premium, a clearly distinguishable fact situation from *Tripp*.

The *Tripp* opinion also relied upon the reasoning found in *Harvey v. United Ins. Co.*, 173 Kan. 227, 245 P.2d 1185 (1958). In *Harvey*, the plaintiff's petition alleged the following facts. On April 6, 1949, the insured submitted an application for life insurance, along with the first monthly premium of $3.11. The insurance company never disapproved the application, and plaintiff had no knowledge as to whether a policy was issued to the insured. The insured died on June 23, 1949. Plaintiff sought, *inter alia*, specific performance of the insurance contract applied for by the insured. The district court overruled the defendant's demurrer. 173 Kan. at 228-30.

On appeal, this court affirmed the district court. 173 Kan. at 235. Finding the petition stated a good cause of action, we held:

"[T]he company was bound to act upon the application one way or another within a reasonable time and the question of what was a reasonable time was for the jury . . . ." 173 Kan. 227, Syl. ¶ 1.

Here again, there was no specific expiration date on the application.

Finally, *Tripp* relied upon the reasoning of *Service v. Pyramid Life Ins. Co.*, 201 Kan. 196, 440 P.2d 944 (1968). Unlike *Waldner* and *Harvey*, the *Service* case did involve a provision for the automatic declination of insurance 60 days after application. In *Service*, Gerald Service and his wife, Zelma, applied for life insurance from Pyramid on June 30, 1964, and paid the first premium. Gerald received a conditional receipt stating in part:

"3. That if *said application is not approved and accepted by the Company* within sixty (60) days from the date hereof, then insurance applied for shall not become effective, and the amount tendered shall be returned. Any delay in the return of the amount tendered shall not be construed as approval of the application." 201 Kan. at 211.

Gerald died on July 21, 1964, during the temporary insurance period. When Zelma questioned the company about coverage, she was told the insurance was in effect. 201 Kan. at 200. Later, however, Pyramid denied coverage and Zelma brought suit. The trial court found in favor of the plaintiff, and on appeal this court affirmed.

In *Service* we thoroughly discussed temporary insurance created by the conditional receipt and the reasons for insurers to offer temporary coverage. If the insurer did not offer temporary coverage upon application the applicant would have the power to revoke the offer made in his application, thereby causing the company to risk losing what it has expended for the investigation and medical examination of the applicant. By offering binding receipts, the applicant has the obligation to perform and the insurer has the use of the premium money at the earliest possible date. 201 Kan. at 210.

Monumental claims *Service* has no application in the case at bar because, in Monumental's words, "[t]he Kansas Supreme Court in *Service* held that Pyramid was *estopped* to deny the existence of life insurance coverage." In support of this claim Monumental cites to the issues listed in the appellate briefs of *Tripp*.

Monumental further argues *Service* should not have been used for support of our decision in *Tripp* because Gerald Service died within the 60-day period of temporary coverage. This presents a significant distinction between the two cases even though the language in *Service* is broad enough to provide the rationale for *Tripp*. The broad language is dicta, however, because it goes beyond the controlling facts.

Monumental further argues the language of the receipt provided the temporary coverage would expire after 45 days. Thus, if the company does not offer a policy within that time limit the application is rejected and no further notice or action by the company is required. Monumental claims applying this argument gives both parties what they bargained for.

In support of its position Monumental cites several cases, including *Hornaday v. Sun Life Ins. Co. of America*, 597 F.2d 90 (7th Cir. 1979), in which an applicant for life insurance paid $12.16 to Sun Life in exchange for a conditional receipt for life insurance coverage. The receipt stated the temporary coverage would last for 60 days. Sun Life issued a policy, but despite several attempts, it was never delivered. The applicant died more than 40 days after the stated date of expiration of the temporary coverage. 597 F.2d at 91-92.

The court held the insurance coverage did not extend beyond the 60-day limit specified in the conditional receipt. 597 F.2d at 94. In order to receive more coverage, the insured should have paid additional premiums. The court, relying heavily upon the fact Sun Life agents had made several good faith efforts to deliver the policy and collect unpaid premiums, stated: "'[I]f the insured successfully avoids contact with the insurer, insurance coverage is in effect indefinitely regardless of the amount of consideration paid.'" 597 F.2d at 94 (quoting the district court).

Monumental also cites *Maldonado v. First National Life Insurance Co.*, 79 N.M. 354, 443 P.2d 744 (1968). In *Maldonado*, an applicant for life insurance paid the initial month's premium and was given a receipt. The receipt provided in part: "Company shall have 60 days from date of application to consider and act upon application. Failure of the Company to offer a policy within such 60 days shall be deemed a declination." The applicant died about 75 days after the date of application. The court held "the

failure to act within sixty days is by the terms of the receipt refusal of the application." 79 N.M. at 354-56.

Monumental further argues that following the rule in *Tripp* will allow a conditional receipt of insurance to provide coverage ad infinitum with no further premium from the insured.

We have carefully considered all of the available cases, particularly *Service,* upon which *Tripp* relied. In *Service,* the insured died during the conditional receipt period, making it completely distinquishable from *Tripp*. From our consideration of all the cases, we conclude *Tripp* should be overruled. The conditional receipts in *Tripp* and in this case state clearly and unequivocally that if no insurance policy is delivered to the applicant within a specified period, there is no insurance. Thus, the contract expired by its own terms. Such does not represent a new principle of law. Most contracts have termination dates. We are mindful of the rule that contracts drafted by one of the parties should be strictly construed against the party who drafted it. Monumental drafted this contract, but because it is clear and unambiguous it requires no construction by this court. *Fast v. Kahan,* 206 Kan. 682, Syl. ¶ 2, 481 P.2d 958 (1971). Thus, the strict construction rule is inapplicable.

It is a cardinal rule of construction that courts will not rewrite a contract by construction if it is clear and unambiguous. See *Havens v. Safeway Stores,* 235 Kan. 226, 231, 678 P.2d 625 (1984). This contract falls into that category. Richard applied for a policy of life insurance. He was issued 45 days of coverage by the conditional receipt. His premium paid for the coverage. If Monumental desired to terminate the temporary coverage before the 45 days expired, it was required to notify him and return his premium. If, however, it did not so notify him, he received 45 days of insurance, but no more, with his premium used for that coverage. In this case the insured died after the coverage under the conditional receipt expired and, therefore, Monumental is not liable. We hereby overrule *Tripp v. The Reliable Life Insurance Co.,* 210 Kan. 33, 499 P.2d 1155 (1972).

In light of the foregoing holding, we need not discuss the remaining issues.

The judgment of the district court is reversed, and this case is remanded with instructions to enter judgment for Monumental Life Insurance Co.

LOCKETT, J., dissenting: The doctrine of stare decisis is not a rule requiring absolute adherence to precedent. The rule of stare decisis does allow courts some flexibility in adjusting the need for stability in the law where public policy requires a change or there is a need for progress in the law. Generally, a court must resolve the issue in favor of following precedent where reliance has been placed upon the existing rule of law.

In his concurring opinion in *State v. McQuillen*, 236 Kan. 161, 689 P.2d 822 (1984), Justice Herd noted and explained why the rule of precedent or stare decisis is based on sound reasoning. He quoted Von Moschzisker, Stare Decisis, Res Judicata and Other Selected Essays 2 (1929), which stated:

" '[T]he rule of *stare decisis* is not a contrivance to hamper the judge in administering justice, but is intended to advance the general usefulness of the law and thus benefit the greatest number. It expedites the work of the courts by preventing the constant reconsideration of settled questions; it enables lawyers to advise their clients with a reasonable degree of certainty and safety; it assures individuals that, in so far as they act on authoritative rules of conduct, their contract and other rights will be protected in the courts; and, finally, it makes for equality of treatment of all men before the law and lends stability to the judicial arm of government.' " 236 Kan. at 175.

*Tripp's* statement,

"[W]hen an application for life insurance is made and the company receives the initial premium and issues a receipt therefor, a policy of temporary insurance is created and said policy of temporary insurance continues in effect until the insurance company declines the application, notifies the insured, and returns the premium, notwithstanding the provisions of the application and the receipt to the contrary,"

has been the law of this State for approximately 20 years. *Tripp v. The Reliable Life Insurance Co.*, 210 Kan. 33, 38, 499 P.2d 1155 (1972). During those 20 years thousands of applications for insurance have been accepted by insurance companies. Neither the insurance companies nor the Commissioner of Insurance have requested the Kansas Legislature to overturn *Tripp* during those 20 years.

The original decision of this court in *Tripp* may have been wrong, but that decision has been relied on for 20 years. The majority admits there is no public policy necessity for overturning *Tripp*. The majority determined *Tripp* must be overturned merely because if the members of the majority had been on the court 20 years ago they would have decided *Tripp* differently. In reversing *Tripp*, the majority of this court fails to consider application of the doctrine of stare decisis. It does not balance the good and the bad which will result from overruling a prior case when not required by a matter of public policy or a need for progress in the law.

The majority's action is wrong and its effect is an example of why the doctrine of stare decisis should be followed. By overruling *Tripp*, the majority announces that it is willing to reconsider settled questions of law when not required to do so when it collectively determines that a prior decision of this court is not the decision that the present majority would have made.

ALLEGRUCCI and ABBOTT, JJ., join in the foregoing dissenting opinion.