**In re Erwin Seymore KAHN,**
**M.D., Debtor.**

**Erwin Seymore KAHN, M.D., Appellant,**

**v.**

**James SCHIGUR and David C.**
**Seitter, Trustee, Appellees.**

**No. 95–2166–KHV.**

United States District Court,
D. Kansas.

Aug. 23, 1996.

Stephen G. Mirakian, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, Eric C. Rajala, Overland Park, KS, for Appellant.

Joanne B. Stutz, Evans & Mullinix, P.A., Lenexa, KS, for Appellee.

David C. Seitter, Trustee, Levy and Craig, P.C., Overland Park, KS.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Debtor Erwin Seymore Kahn, M.D., appeals the bankruptcy court's ruling that the ·Mutual Release and Settlement Agreement dated January 19, 1993, does not bar James Schigur's Amended Proof of Claim filed January 7, 1993. For reasons stated below, we reverse the decision of the bankruptcy court.

### A. FACTS

On October 9, 1991, Kahn filed a petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, et al., Case No. 91–22100–7. David C. Seitter was appointed Trustee of the bankruptcy estate.

Prior to the bankruptcy filing, Kahn and Schigur engaged in various business transactions. On February 13, 1992, Schigur filed a Proof of Claim against the bankruptcy estate. On January 7, 1993, Schigur filed an Amended Proof of Claim which increased the amount of the original claim.

On March 17, 1992, Schigur and the Trustee, as joint plaintiffs, filed an adversary proceeding against Kahn challenging his right to receive a general discharge under 11 U.S.C. § 727(a)(2)(A). In January, 1993, the parties settled the adversary proceeding by executing a Mutual Release And Settlement Agreement.[1] The agreement recited that the parties had agreed that it was in the best interest of the bankruptcy estate and its creditors to compromise and settle the obligations, liabilities, and debts of Kahn to Schigur and the Trustee and to provide mutual releases. Under the agreement, Kahn agreed, inter alia, to tender certain property and sums of money into the bankruptcy estate. In addition, the agreement contained the following release language:

> Debtor [Kahn] and Plaintiffs [Schigur and the Trustee], for themselves, their heirs, successors, assigns, agents, attorneys, officers and employees, hereby waive, compromise, release, cancel, satisfy and discharge one against the other any and all debts, liabilities, claims, demands, actions and causes of actions whatsoever that they respectively have or may have or may claim one against the other from the beginning of time to the date of this Agreement, whether known or unknown at the time of the · execution of this Agreement, and whether arising under federal law or regulation, a state law or regulation, a county or city regulation ordinance [sic] or at law or equity, EXCEPTING any issues relating to the post-petition payments of malpractice premiums by Spring Anesthesia on Dr. Kahn's behalf.

The bankruptcy court approved the Mutual Release And Settlement Agreement on February 18, 1993.

### B. PROCEDURAL BACKGROUND

On May 5, 1994, Kahn filed a motion to conduct examination under oath and request for documents by Schigur, pursuant to Bankruptcy Rule 2004. On May 10, 1994, Schigur filed an objection to the motion, arguing that the Mutual Release And Settlement Agreement estopped Kahn from asserting any claim against Schigur. On August 29, 1994, the bankruptcy court determined that before deciding the motion, it needed to decide whether Schigur's claim against the bank-

---

1. The Trustee signed the agreement on January 13, 1993, and Schigur and Kahn signed the agreement on January 19, 1993.

ruptcy estate was barred by the Mutual Release And Settlement Agreement.

On November 16, 1994, after briefing and argument by the parties, the bankruptcy court found that the Mutual Release And Settlement Agreement does not bar Schigur's proof of claim. Although the court noted that the broad, boiler-plate release language in the agreement would certainly have the effect of releasing all claims of Schigur against Kahn in a two-party adversary case in state or federal court, it concluded that the parties did not intend to release Schigur's proof of claim against the bankruptcy estate. The court interpreted the agreement with its primary focus on administration of the bankruptcy estate and purposes of the Bankruptcy Code, because the agreement arose post-petition in the context of a bankruptcy adversary proceeding. In reaching its conclusion, the Court cited § 105 of the Bankruptcy Code, the comment to § 541 of the Bankruptcy Code, and the Trustee's affidavit that he did not agree to release Schigur's claim against the estate. The court reasoned that although the agreement had the effect of releasing all other liability of Kahn to Schigur, Kahn lacked power to release a claim against the estate, and the Trustee did not intend to release Schigur's claim against the estate.

## C. DISCUSSION

We review *de novo* the bankruptcy court's legal conclusions; however, we are bound by the bankruptcy court's factual findings unless they are clearly erroneous. *In re Themy,* 6 F.3d 688, 689 (10th Cir.1993).

Kahn contends that the settlement agreement is unambiguous and, thus, the bankruptcy court should have determined the parties' intent based on the language of the agreement alone. Because the agreement prevents Schigur from asserting a claim against Kahn outside of bankruptcy, Kahn asserts that Schigur's claim against the estate is not allowable under § 502(b)(1). As set forth below, Kahn's assertions are well supported in law.

Under Kansas law, a clear and unambiguous contract requires no construction by the court. *Thomas v. Thomas,* 250 Kan. 235, 244, 824 P.2d 971 (1992). Thus, a court must enforce an unambiguous contract according to its terms. *Torre v. Federated Mutual Ins. Co.,* 854 F.Supp. 790 (D.Kan. 1994). As long as its terms are plain and unambiguous, the court determines the meaning of the contract and the parties' intent from the written agreement itself. *First Nat'l Bancshares of Beloit, Inc. v. Geisel,* 853 F.Supp. 1337, 1341 (D.Kan.1994). *See also Harvest Queen Mill & Elevator Co. v. Newman,* 387 F.2d 1, 3 (10th Cir.1967) (under Kansas law effect of release is determined by intention of parties as manifested by the instrument).

Whether a contract is ambiguous is a question of law for the court. *Christie v. K–Mart Corp. Employees Retirement Pension Plan,* 784 F.Supp. 796, 803 (D.Kan. 1992). An ambiguity exists if a term can be interpreted reasonably in more than one way. *Christie,* 784 F.Supp. at 803.

Schigur contends that under the release agreement, he and the Trustee agreed only that they would not pursue Kahn on issues relating to denial of his discharge, and that the Trustee did not intend to release Schigur's claim against the estate.[2] While Schigur is correct in his assertion that the agreement does not specifically release any claims between him and the Trustee, the agreement clearly and unambiguously provides that Schigur waives all claims against Kahn (except those relating to post-petition malpractice premiums paid on Kahn's behalf). Specifically, the Mutual Release And Settlement Agreement provides that Schigur and Kahn "waive, compromise, release, cancel, satisfy and discharge one against the other any and all debts, liabilities, [and] claims. . . ." Because the language of the agreement is unambiguous, the Court is bound to determine the meaning of the contract and the parties' intent from the terms of the written agreement.

Because Schigur's claim is unenforceable against Kahn under the Mutual Release And

---

2. Schigur does not assert that he erred in executing the settlement agreement. Instead, he contends that the parties did not intend the settle-ment agreement to release claims between him and the bankruptcy estate.

Settlement Agreement, his claim is not allowed against the estate under § 502(b)(1). Section 502(b)(1) provides that a claim against the estate is disallowed to the extent such claim is "unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Schigur argues that § 502(b)(1) requires the Court to determine whether a claim is unenforceable against the debtor only at the time the bankruptcy petition is filed. Section 502(b) directs the Court to determine the amount of claim as of the date the petition is filed; however, the statute does not specify a point in time that the claim must be unenforceable against the debtor to be disallowed under subsection (1). A plain reading of the statute indicates that the Court should determine whether the claim is enforceable at the time it is deciding whether the claim is disallowed. Since many circumstances exist in which a claim may become unenforceable after the petition is filed, i.e., a third-party guarantor may satisfy the claim, this is also the most practical reading of the statute.

The Court sympathizes with the bankruptcy court's attempt to reach the most equitable result under § 105 of the Bankruptcy Code. The equitable powers provided by § 105(a) are broad; however, they may not be exercised in a manner which is inconsistent with specific provisions of the Bankruptcy Code. See In re Frieouf, 938 F.2d 1099, 1103 n. 4 (10th Cir.1991), cert. denied, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992); Matter of Smith, 21 F.3d 660, 666 (5th Cir.1994). Schigur's claim is clearly unenforceable against Kahn under the Mutual Release And Settlement Agreement and, as a result, § 502(b)(1) disallows the claim against the estate.

The bankruptcy court's order that the Mutual Release and Settlement Agreement dated January 19, 1993, does not bar James Schigur's Amended Proof of Claim filed January 7, 1993, is therefore REVERSED.